## McCOY *v.* COURT OF APPEALS OF WISCONSIN, DISTRICT 1

No. 87–5002.   Argued January 20, 1988—Decided June 6, 1988

STEVENS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, O'CONNOR, and SCALIA, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which MARSHALL and BLACKMUN, JJ., joined, *post*, p. 445. KENNEDY, J., took no part in the consideration or decision of the case.

*Louis B. Butler, Jr.*, argued the cause and filed briefs for appellant.

*Stephen W. Kleinmaier*, Assistant Attorney General of Wisconsin, argued the cause for appellee. With him on the brief was *Donald J. Hanaway*, Attorney General.*

JUSTICE STEVENS delivered the opinion of the Court.

Like *Anders* v. *California*, 386 U. S. 738 (1967), this case concerns the scope of court-appointed appellate counsel's duty to an indigent client after counsel has conscientiously determined that the indigent's appeal is wholly frivolous. In *Anders*, we held that counsel could not withdraw by simply advising the court of his or her conclusion, but must include with the request to withdraw "a brief referring to anything in the record that might arguably support the appeal." *Id.*, at 744. The Wisconsin Supreme Court has adopted a Rule that requires such a brief also to include "a discussion of why the issue lacks merit."[1] Appellant challenged the constitution-

---

*\*Kim Robert Fawcett, John A. Powell, Steven R. Shapiro*, and *Larry W. Yackle* filed a brief for the National Legal Aid and Defender Association et al. as *amici curiae*.

[1] Rule 809.32, Wis. Rules of App. Proc., provides:

"Rule (No merit reports) (1). If an attorney appointed under s.809.30 or ch. 977 is of the opinion that further appellate proceedings on behalf of the defendant would be frivolous and without any arguable merit within the

ality of the Rule in the Wisconsin Supreme Court. Over the dissent of three of its justices, the court upheld the Rule, rejecting appellant's contentions that the Rule is inconsistent with *Anders* and that it forces counsel to violate his or her client's Sixth Amendment rights. *Wisconsin ex rel. McCoy* v. *Wisconsin Court of Appeals*, 137 Wis. 2d 90, 403 N. W. 2d 449 (1987). We noted probable jurisdiction, 484 U. S. 813 (1987), and now affirm.

## I

Appellant is indigent. A Wisconsin trial judge found him guilty of abduction and sexual assault and sentenced him to prison for 12 years. He has filed an appeal from that conviction and an attorney has been appointed to represent him. After studying the case, the attorney advised him that further appellate proceedings would be completely useless and that he had three options: He could voluntarily dismiss the appeal; he could go forward without a lawyer; or he could authorize the attorney to file a brief that would present the strongest arguments the lawyer could make in support of the

meaning of Anders v. California, 386 U. S. 738 (1967), the attorney shall file with the court of appeals 3 copies of a brief in which is stated anything in the record that might arguably support the appeal and a discussion of why the issue lacks merit. The attorney shall serve a copy of the brief on the defendant and shall file a statement in the court of appeals that service has been made upon the defendant. The defendant may file a response to the brief within 30 days of service.

"(2) The attorney shall file in the trial court a notice of appeal of the judgment of conviction and of any order denying a postconviction motion. The clerk of the trial court shall transmit the record in the case to the court pursuant to s.809.15. The no merit brief and notice of appeal must be filed within 180 days of the service upon the defendant of the transcript under s.809.30(1)(e).

"(3) In the event the court of appeals finds that further appellate proceedings would be frivolous and without any arguable merit, the court of appeals shall affirm the judgment of conviction and the denial of any postconviction motion and relieve the attorney of further responsibility in the case. The attorney shall advise the defendant of the right to file a petition for review to the supreme court under s.809.62."

appeal but would also advise the court of the lawyer's conclusion that the appeal is frivolous. Appellant selected the third option.

Appellant's counsel then prepared a brief that can fairly be characterized as schizophrenic. In his role as an advocate for appellant, counsel stated the facts, advanced four arguments for reversal, and prayed that the conviction be set aside. In his role as an officer of the court, counsel stated that further appellate proceedings on behalf of his client "would be frivolous and without any arguable merit," App. 14, and prayed that he be permitted to withdraw, id., at 27. Thus, in the same document, the lawyer purported to maintain that there were arguments warranting a reversal and also that those arguments were wholly without merit. The brief did not contain an explanation of the reasons for counsel's conclusion. Instead, counsel explained why he believed that it would be both unethical and contrary to *Anders* to discuss the reasons why the appeal lacked merit.[2] Because the brief did not comply with the discussion requirement in Rule 809.32(1), the court ordered it stricken and directed counsel to submit a conforming brief within 15 days. App. 30.

Appellant's counsel did not comply with that order. Instead, after unsuccessfully attempting to obtain a ruling on the constitutionality of the Rule in the intermediate appellate court, he filed an original action in the Wisconsin Supreme Court seeking to have the discussion requirement in Rule

---

[2] The brief stated, in part:

"Counsel would no longer be an advocate, as required by *Anders*, but would be in the awkward position of arguing why his client's appeal lacks merit. This would be contrary to the mandate of *Anders* that the attorney not brief the case against the client and that the attorney act as an advocate. Since an attorney is legally bound to represent the best interests of his or her client until relieved from further representation by this court, defendant and this attorney submit that a discussion of why any issue lacks merit would violate the sixth amendment." App. 15–16.

809.32(1) declared unconstitutional.[3]   The Supreme Court agreed with portions of appellant's argument, but rejected his ultimate conclusion.   The court reaffirmed its acceptance of the principle that appointed counsel have the same obligations as paid counsel to provide their clients with adequate representation,[4] and it agreed that the *Anders* opinion had not sanctioned a discussion requirement.[5]   Moreover, the court also agreed that it is ultimately the responsibility of the court—and not of counsel—to decide whether an appeal is wholly frivolous.   It explained, however, that the discussion requirement in the Wisconsin Rule assists the court in making that determination:

> "When the court has before it a reasoned summary of the law militating against further appellate proceedings, it can be assured that the attorney has made an inquiry into the relative merits of the appeal and that the attorney's withdrawal request is valid and grounded in fact and in the law."   137 Wis. 2d, at 101, 403 N. W. 2d, at 454.

The court noted that because its procedures for handling frivolous appeals were far removed from the simple statement of counsel's conclusion that this Court condemned in *Anders*,

---

[3] In his request for a declaratory judgment and a writ of prohibition, appellant asked the Supreme Court to "strike that portion of rule 809.32(1) which requires that the attorney provide reasons why the issue lacks merit as unconstitutional, prohibit the court of appeals from striking the brief already filed, and prohibit the court of appeals from requiring petitioner to provide reasons why relator's appeal lacks merit in compliance with Rule 809.32(1)." *Id.*, at 54.

[4] "We have previously recognized, in a case decided prior to the enactment of the no-merit rule, that the *Anders* analysis compels appointed counsel to 'perform his duties as adequately as paid counsel so the indigent will not be deprived of adequate representation because of his indigency.' *Cleghorn* v. *State*, 55 Wis. 2d 466, 471, 198 N. W. 2d 577 (1972).   We reaffirm our belief in that principle." 137 Wis. 2d, at 97, 403 N. W. 2d, at 452.

[5] "While *Anders* does not sanction the use of the discussion requirement, it does not proscribe it, either." *Ibid.*

they did not raise the "quality and equality of attorney representation" concerns that underlay our decision in *Anders*. 137 Wis. 2d, at 101–102, 403 N. W. 2d, at 454. The court also pointed out that the Rule does not require an attorney to argue against his or her client; rather it merely requires the attorney to fulfill his or her duty to the courts.[6] Accordingly, the court upheld the Rule.

The dissenting justices expressed the view that the discussion requirement was not necessary[7] and that it improperly required defense counsel to assume the role of either an *amicus curiae*, or even an adversary, instead of acting exclusively as an advocate for the client.

In this Court appellant makes two basic attacks on the Rule. He argues that it discriminates against the indigent appellant and that it violates his right to effective representation by an advocate. Both arguments rest largely on the assumption that retained counsel will seldom, if ever, advise an appellate court that he or she has concluded that a client's appeal is meritless, or provide the court with a discussion of the reasons supporting such a conclusion. In determining whether Wisconsin's Rule requiring appointed counsel to provide an appellate court with such advice is constitutional, it is appropriate to begin by restating certain propositions estab-

---

[6] "[W]e do not believe the rule requires an attorney to argue against the client; rather, we believe the rule requires an attorney to fulfill a duty that co-exists with the duty owed to the client—that duty which is owed to the court. The court will be better equipped to make the correct decision about the potential merits of the appeal if it has before it not only the authorities which might favor an appeal, but also the authorities which might militate against it." *Id.*, at 100–101, 403 N. W. 2d, at 454.

[7] "Appointed appellate criminal defense counsel's request to withdraw in itself puts the court on notice that counsel considers the arguments in the no-merit brief frivolous. Once raised, frivolous arguments by their very nature should not be difficult for a court to evaluate on its own without counsel supplying case authorities or factual references which militate against the appeal." *Id.*, at 106, 403 N. W. 2d, at 456 (Abrahamson, J., dissenting).

lished by our previous decisions concerning the right to counsel and the obligations of both paid and appointed counsel.

## II

A State's enforcement of its criminal laws must comply with the principles of substantial equality and fair procedure that are embodied in the Fourteenth Amendment. The Sixth Amendment's requirement that "the accused shall enjoy the right to have the Assistance of Counsel for his defense" is therefore binding on the States. *Gideon* v. *Wainwright*, 372 U. S. 335 (1963). As we explained in *Gideon*, "in our adversary system of criminal justice, any person hailed into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." *Id.*, at 344. It is therefore settled law that an indigent defendant has the same right to effective representation by an active advocate as a defendant who can afford to retain counsel of his or her choice. The "guiding hand of counsel," see *Powell* v. *Alabama*, 287 U. S. 45, 68–69 (1932), is essential for the evaluation of the prosecution's case, the determination of trial strategy, the possible negotiation of a plea bargain and, if the case goes to trial, making sure that the prosecution can prove the State's case with evidence that was lawfully obtained and may lawfully be considered by the trier of fact.

At the trial level, defense counsel's view of the merits of his or her client's case never gives rise to a duty to withdraw. That a defense lawyer may be convinced before trial that any defense is wholly frivolous does not qualify his or her duty to the client or to the court. Ethical considerations and rules of court prevent counsel from making dilatory motions, adducing inadmissible or perjured evidence, or advancing frivolous or improper arguments, but those constraints do not qualify the lawyer's obligation to maintain that the stigma of guilt may not attach to the client until the presumption of innocence has been overcome by proof beyond a reasonable doubt.

After a judgment of conviction has been entered, however, the defendant is no longer protected by the presumption of innocence. If a convicted defendant elects to appeal, he retains the Sixth Amendment right to representation by competent counsel, but he must assume the burden of convincing an appellate tribunal that reversible error occurred at trial. Although trial counsel may remain silent and force the prosecutor to prove every element of the offense, counsel for an appellant cannot serve the client's interest without asserting specific grounds for reversal. In so doing, however, the lawyer may not ignore his or her professional obligations. Neither paid nor appointed counsel may deliberately mislead the court with respect to either the facts or the law, or consume the time and the energies of the court or the opposing party by advancing frivolous arguments. An attorney, whether appointed or paid, is therefore under an ethical obligation to refuse to prosecute a frivolous appeal.[8]

> "A lawyer, after all, has no duty, indeed no right, to pester a court with frivolous arguments, which is to say arguments that cannot conceivably persuade the court, so if he believes in good faith that there are no other arguments that he can make on his client's behalf he is honorbound to so advise the court and seek leave to withdraw as counsel." *United States* v. *Edwards*, 777 F. 2d 364, 365 (CA7 1985).

---

[8] "See ABA Standards for Criminal Justice, Commentary to 4—3.9 (2d ed. 1980) ('No lawyer, whether assigned by the court, part of a legal aid or defender staff, or privately retained or paid, has any duty to take any steps or present dilatory or frivolous motions or any actions that are unfounded according to the lawyer's informed professional judgment. On the contrary, to do so is unprofessional conduct'); ABA Standing Committee on Ethics and Professional Responsibility, Informal Opinion 955, Obligation to Take Criminal Appeal, reprinted in 2 Informal Ethics Opinions 955–956 (1975) (like court-appointed lawyer, private counsel 'ethically, should not clog the courts with frivolous motions or appeals'). See also *Nickols* v. *Gagnon*, 454 F. 2d 467, 472 (CA7 1971)." *Polk County* v. *Dodson*, 454 U. S. 312, 323–324, n. 14 (1981).

When retained counsel concludes that an appeal would be frivolous, he or she has a duty to advise the client that it would be a waste of money to prosecute the appeal and that it would be unethical for the lawyer to go forward with it. When appointed counsel comes to the same conclusion, the same duty to withdraw arises. Appointed counsel, however, is presented with a dilemma because withdrawal is not possible without leave of court, and advising the court of counsel's opinion that the appeal is frivolous would appear to conflict with the advocate's duty to the client. It is well settled, however, that this dilemma must be resolved by informing the court of counsel's conclusion. As we stated three decades ago:

> "If counsel is convinced, after conscientious investigation, that the appeal is frivolous, of course, he may ask to withdraw on that account. If the court is satisfied that counsel has diligently investigated the possible grounds of appeal, and agrees with counsel's evaluation of the case, then leave to withdraw may be allowed and leave to appeal may be denied." *Ellis* v. *United States*, 356 U. S. 674, 675 (1958).

We reaffirmed this basic proposition in *Anders*.[9] Moreover, the fact that an appointed appellate lawyer may find it necessary to file a motion to withdraw because he or she has concluded that an appeal is frivolous does not indicate that the indigent defendant has received less effective representation than the affluent. We categorically rejected that suggestion in *Polk County* v. *Dodson*, 454 U. S. 312 (1981). As Justice Powell explained in his opinion for the Court:

> "Dodson's argument assumes that a private lawyer would have borne no professional obligation to refuse to

---

[9] "Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he *should* so advise the court and request permission to withdraw." 386 U. S., at 744 (emphasis added).

prosecute a frivolous appeal. This is error. In claiming that a public defender is peculiarly subject to divided loyalties, Dodson confuses a lawyer's ethical obligations to the judicial system with an allegiance to the adversary interests of the State in a criminal prosecution. Although a defense attorney has a duty to advance all colorable claims and defenses, the canons of professional ethics impose limits on permissible advocacy. It is the obligation of any lawyer—whether privately retained or publicly appointed—not to clog the courts with frivolous motions or appeals. Dodson has no legitimate complaint that his lawyer refused to do so." *Id.*, at 323 (footnote omitted).

In *Anders* we squarely held that the principle of substantial equality is not compromised when appointed counsel files a "no merit" brief even though such briefs are seldom, if ever, filed by retained counsel. As we stated in *Douglas* v. *California*, 372 U. S. 353, 357 (1963), "[a]bsolute equality is not required."

The principle of substantial equality does, however, require that appointed counsel make the same diligent and thorough evaluation of the case as a retained lawyer before concluding that an appeal is frivolous. Every advocate has essentially the same professional responsibility whether he or she accepted a retainer from a paying client or an appointment from a court. The appellate lawyer must master the trial record, thoroughly research the law, and exercise judgment in identifying the arguments that may be advanced on appeal. In preparing and evaluating the case, and in advising the client as to the prospects for success, counsel must consistently serve the client's interest to the best of his or her ability. Only after such an evaluation has led counsel to the conclusion that the appeal is "wholly frivolous"[10] is counsel

---

[10] The terms "wholly frivolous" and "without merit" are often used interchangeably in the *Anders*-brief context. Whatever term is used to describe the conclusion an attorney must reach as to the appeal before

justified in making a motion to withdraw. This is the central teaching of *Anders*.[11]

In *Anders* we held that a motion to withdraw must be accompanied by "a brief referring to anything in the record that might arguably support the appeal." 386 U. S., at 744. That requirement was designed to provide the appellate courts with a basis for determining whether appointed counsel have fully performed their duty to support their clients' appeals to the best of their ability. The *Anders* requirement assures that indigent defendants have the benefit of what wealthy defendants are able to acquire by purchase—a diligent and thorough review of the record and an identification of any arguable issues revealed by that review.[12] Thus, the *Anders* brief assists the court in making the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw.[13]

---

requesting to withdraw and the court must reach before granting the request, what is required is a determination that the appeal lacks any basis in law or fact.

[11] The question presented by Anders' certiorari petition read as follows: "May a State appellate court refuse to provide counsel to brief and argue an indigent criminal defendant's first appeal as of right on the basis of a conclusory statement by the appointed attorney on appeal that the case has no merit and that he will file no brief?" See Brief for Petitioner in *Anders* v. *California*, O. T. 1966, No. 98, p. 2.

The court gave a negative answer to that question. A "conclusory statement" by counsel is not sufficient to justify an appellate court's refusal to provide counsel to argue an indigent defendant's appeal. For the court— not counsel—must "decide whether the [appeal] is wholly frivolous," 386 U. S., at 744, and counsel must provide the court with sufficient guidance to make sure that counsel's appraisal of the case is correct.

[12] Although a wealthy defendant cannot pay to have frivolous arguments presented to the court unless he or she locates an unscrupulous attorney, such a defendant can pay to have a competent attorney examine the trial court record, search for error, and explain to him or her the strongest arguments that could be made in support of an appeal.

[13] It is essential to keep in mind that the so-called "*Anders* brief" is not expected to serve as a substitute for an advocate's brief on the merits, for

## III

The question whether the Wisconsin Rule is consistent with our holding in *Anders* must be answered in light of the Wisconsin Supreme Court's explanation of the Rule's requirements:

> "We interpret the discussion rule to require a statement of reasons why the appeal lacks merit which might include, for example, a brief summary of any case or statutory authority which appears to support the attorney's conclusions, or a synopsis of those facts in the record which might compel reaching that same result. We do not contemplate the discussion rule to require an attorney to engage in a protracted argument in favor of the conclusion reached; rather, we view the rule as an attempt to provide the court with 'notice' that there are facts on record or cases or statutes on point which would seem to compel a conclusion of no merit." 137 Wis. 2d, at 100, 403 N. W. 2d, at 454.

As so construed, the Rule appears to require that the attorney cite the principal cases and statutes and the facts in the record that support the conclusion that the appeal is meritless. The Rule also requires a brief statement of why these citations lead the attorney to believe the appeal lacks merit. The former requirement is, as far as the Federal Constitution is concerned, entirely unobjectionable. Attorneys are obligated to act with candor in presenting claims for judicial resolution. The rules of ethics already prescribe circumstances in which an attorney must disclose facts and law contrary

---

it would be a strange advocate's brief that would contain a preface advising the court that the author of the brief is convinced that his or her arguments are frivolous and wholly without merit. Rather, the function of the brief is to enable the court to decide whether the appeal is so frivolous that the defendant has no federal right to have counsel present his or her case to the court.

to his or her client's interests.[14]   That the Wisconsin Rule requires counsel also to do so when seeking to withdraw on the ground that the appeal is frivolous does not deny the client effective assistance of counsel any more than the rules of ethics do.

The aspect of the Rule that has provoked the concern of counsel for petitioner and other members of the defense bar is that which calls for the attorney to reveal the basis for his or her judgment.[15]   Although neither appellant nor *amici* supporting appellant debate the propriety of allowing defense counsel to satisfy his or her ethical obligations to the court by asserting his or her belief that the appeal is frivolous and seeking to withdraw, they do contend that requiring the attorney to assert the basis for this conclusion violates the client's Sixth and Fourteenth Amendment rights and is contrary to *Anders*.   We disagree.

The Wisconsin Rule is fully consistent with the objectives that are served by requiring that a motion to withdraw be ac-

---

[14] Rule 3.3 of the ABA Model Rules of Professional Conduct (1984) provides in part:

"CANDOR TOWARD THE TRIBUNAL

"(a)  A lawyer shall not knowingly:

"(1)  make a false statement of material fact or law to a tribunal;

"(2)  fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

"(3)  fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

"(4)  offer evidence that the lawyer knows to be false."

The commentary to the Rule explains, "[t]here are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation."   See also G. Hazard & W. Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct 352 (1985) ("The duty to reveal adverse precedent is well established").

[15] See Brief for the National Legal Aid and Defender Association et al. as *Amici Curiae* 6.

companied by a brief referring to all claims that might argu-
ably support the appeal. Unlike the typical advocate's brief
in a criminal appeal, which has as its sole purpose the persua-
sion of the court to grant relief to the defendant, the *Anders*
brief is designed to assure the court that the indigent defend-
ant's constitutional rights have not been violated. To satisfy
federal constitutional concerns, an appellate court faces two
interrelated tasks as it rules on counsel's motion to withdraw.
First, it must satisfy itself that the attorney has provided the
client with a diligent and thorough search of the record for
any arguable claim that might support the client's appeal.
Second, it must determine whether counsel has correctly con-
cluded that the appeal is frivolous. Because the mere state-
ment of such a conclusion by counsel in *Anders* was insuffi-
cient to allow the court to make the required determinations,
we held that the attorney was required to submit for the
court's consideration references to anything in the record
that might arguably support the appeal. Wisconsin's Rule
merely requires that the attorney go one step further. In-
stead of relying on an unexplained assumption that the attor-
ney has discovered law or facts that completely refute the
arguments identified in the brief, the Wisconsin court re-
quires additional evidence of counsel's diligence. This re-
quirement furthers the same interests that are served by
the minimum requirements of *Anders*. Because counsel may
discover previously unrecognized aspects of the law in the
process of preparing a written explanation for his or her con-
clusion, the discussion requirement provides an additional
safeguard against mistaken conclusions by counsel that the
strongest arguments he or she can find are frivolous. Just
like the references to favorable aspects of the record required
by *Anders*, the discussion requirement may forestall some
motions to withdraw and will assist the court in passing on
the soundness of the lawyer's conclusion that the appeal is
frivolous.[16]

---

[16] Anders argued in his brief that counsel should be required to state why
he or she thought the appeal frivolous. He referred with approval in his

The Rule does not place counsel in the role of *amicus curiae*. In *Anders* petitioner argued that California's rule allowing counsel to withdraw on the basis of a conclusory statement that the appeal was meritless posed the danger that some counsel might seek to withdraw not because they thought the appeal frivolous but because, seeing themselves as friends of the court, they thought after weighing the probability of success against the time burdens on the court and the attorney if full arguments were presented that it would be best not to pursue the appeal. Brief for Petitioner in *Anders* v. *California*, O. T. 1966, No. 98, p. 13. We agreed that the California rule might improperly encourage counsel to consider the burden on the court in determining whether to prosecute an appeal. Wisconsin's Rule requiring the attorney to outline why the appeal is frivolous obviously does not pose this danger.

We also do not find that the Wisconsin Rule burdens an indigent defendant's right to effective representation on appeal or to due process on appeal. We have already rejected the contention that by filing a motion to withdraw on the ground that the appeal is frivolous counsel to an indigent defendant denies his or her client effective assistance of counsel or provides a lesser quality of representation than an affluent defendant could obtain. If an attorney can advise the court of his or her conclusion that an appeal is frivolous without impairment of the client's fundamental rights, it must follow that no constitutional deprivation occurs when the attorney explains the basis for that conclusion. A supported conclusion that the appeal is frivolous does not implicate Sixth or Fourteenth Amendment concerns to any greater extent than does a bald conclusion.

---

brief to the practice of the United States Court of Appeals for the District of Columbia Circuit, which required counsel to "convince the court that the issues are truly 'frivolous' . . . in a documented memorandum which analyzes the facts and applicable law." Brief for Petitioner in *Anders* v. *California*, O. T. 1966, No. 98, p. 16.

The *Anders* brief is not a substitute for an advocate's brief on the merits. As explained above, it is a device for assuring that the constitutional rights of indigent defendants are scrupulously honored. The Wisconsin Rule does no injury to that purpose, nor does it diminish any right a defendant may have under state law to an appeal on the merits. Once the court is satisfied both that counsel has been diligent in examining the record for meritorious issues and that the appeal is frivolous, federal concerns are satisfied and the case may be disposed of in accordance with state law. Of course, if the court concludes that there are nonfrivolous issues to be raised, it must appoint counsel to pursue the appeal and direct that counsel to prepare an advocate's brief before deciding the merits.

It bears emphasis that the attorney's obligations as an advocate are not diminished by the additional requirement imposed by the Wisconsin Rule. The attorney must still provide his or her client precisely the services that an affluent defendant could obtain from paid counsel—a thorough review of the record and a discussion of the strongest arguments revealed by that review. In searching for the strongest arguments available, the attorney must be zealous and must resolve all doubts and ambiguous legal questions in favor of his or her client. Once that obligation is fulfilled, however, and counsel has determined that the appeal is frivolous—and therefore that the client's interests would not be served by proceeding with the appeal—the advocate does not violate his or her duty to the client by supporting a motion to withdraw with a brief that complies with both *Anders* and the Wisconsin Rule.

The judgment of the Wisconsin Supreme Court is

*Affirmed.*

JUSTICE KENNEDY took no part in the consideration or decision of this case.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL and JUSTICE BLACKMUN join, dissenting.

Indigent and incarcerated, appellant Ellis T. McCoy fights an uphill battle to overturn his conviction. Standing alone, he is hardly a match against the formidable resources the State has committed to keeping him behind bars. Appellant's most crucial ally in this fight is the court-appointed appellate counsel that the State is constitutionally obligated to furnish him. Because the very State that is resolved to deprive appellant of liberty pays his defense counsel, he might understandably suspect his defender's allegiance. Sensitive to that natural distrust, we have always assured indigent defendants such as appellant that our Constitution's guarantee that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense," U. S. Const., Amdt. 6, "contemplates the services of an attorney devoted solely to the interests of his client." *Von Moltke* v. *Gillies*, 332 U. S. 708, 725 (1948) (plurality opinion) (citation omitted). We have counseled them not to fear that they will receive no more justice than they can afford, because the "constitutional requirement of substantial equality and fair process" means that the rich and poor alike deserve "the same rights and opportunities on appeal . . . ." *Anders* v. *California*, 386 U. S. 738, 744, 745 (1967). The Court today reneges on these longstanding assurances by permitting a State to force its appointed defender of the indigent to advocate against his client upon unilaterally concluding that the client's appeal lacks merit. I dissent.

I

"The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." *Herring* v. *New York*, 422 U. S. 853, 862 (1975). See also *Kimmelman* v. *Morrison*, 477 U. S. 365, 379–380 (1986). Accordingly, our Constitution imposes on defense counsel an "overarching duty,"

*Strickland* v. *Washington,* 466 U. S. 668, 688 (1984), to "advanc[e] 'the undivided interests of his client,'" *Polk County* v. *Dodson,* 454 U. S. 312, 318–319 (1981) (quoting *Ferri* v. *Ackerman,* 444 U. S. 193, 204 (1979)), and on the State a concomitant "constitutional obligation . . . to respect the professional independence of the public defenders whom it engages," 454 U. S., at 321–322 (footnote omitted). Once "the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated." *United States* v. *Cronic,* 466 U. S. 648, 656–657 (1984) (footnote omitted). Our commitment to the adversarial process, we have repeatedly recognized, is every bit as crucial on appeal of a criminal conviction as it is at trial. See, *e. g., Douglas* v. *California,* 372 U. S. 353 (1963); *Entsminger* v. *Iowa,* 386 U. S. 748, 751 (1967); *Evitts* v. *Lucey,* 469 U. S. 387 (1985). On appeal, as at trial, our Constitution guarantees the accused "an active advocate, rather than a mere friend of the court assisting in a detached evaluation of the appellant's claim." *Evitts, supra,* at 394 (citations omitted). See also *Jones* v. *Barnes,* 463 U. S. 745, 758 (1983) (BRENNAN, J., dissenting).

Naturally, the defense counsel's duty to advocate, whether on appeal or at trial, is tempered by ethical rules. For example, counsel may not in his or her zeal to advocate a client's case fabricate law or facts or suborn perjury, and must at times disclose law contrary to the client's position. See *ante,* at 440–441, and n. 14. Similarly, defense counsel have an ethical duty not to press appeals they believe to be frivolous, even though other lawyers might see an issue of arguable merit. See *Polk County, supra,* at 323–324. For retained counsel, who may decline to represent a paying client in what counsel believes to be a frivolous appeal, the latter duty does not interfere with the duty of unwavering allegiance to the client. Since, however, court-appointed counsel may withdraw only with court approval, the indigent client who insists on pursuing an appeal that counsel finds frivolous presents a

unique dilemma: Appointed counsel, cast ostensibly in the role of defender, must announce to the court that will rule on a client's appeal that he or she believes the client has no case.

We have struck a delicate balance permitting an appointed counsel to satisfy his or her ethical duty to the court in the manner that least compromises the constitutional duty to advocate the client's case and that thereby minimizes the disadvantage to the indigent. Our cases make abundantly clear that an appointed counsel's constitutional duty to advocate zealously on the client's behalf does not end abruptly upon his or her conclusion that the client has no case. We have, for example, flatly disapproved of a regime that permits appointed defense counsel—or anyone other than the appellate tribunal itself—to adjudge finally the worthiness of an indigent defendant's appeal. See *Lane* v. *Brown*, 372 U. S. 477, 485 (1963); *Anders* v. *California*, *supra*, at 744 ("[T]he court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous").

Similarly, our Constitution strictly limits the appointed counsel's latitude to depart from the role of defender—either by declining to advocate at all or, worse yet, by opposing the client—when that counsel believes his or her client's appeal lacks merit. In *Anders*, *supra*, we held that a court may not permit appointed counsel to withdraw from a criminal appeal on the basis of the bald assertion that "'there is no merit to the appeal.'" *Id.*, at 742. Instead, appointed counsel's "role as advocate requires that he support his client's appeal to the best of his ability" and that any request to withdraw on the ground that the appeal is frivolous "must . . . be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Id.*, at 744. Central to our analysis was the constitutional imperative to "assure penniless defendants the same rights and opportunities on appeal—as nearly as is practicable—as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel." *Id.*, at 745. This "constitutional

requirement of substantial equality and fair process," we held, "can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae.*" *Id.*, at 744. We took pains to emphasize that the *Anders*-brief requirement "would not force appointed counsel to brief his case against his client but would merely afford the latter that advocacy which a nonindigent defendant is able to obtain." *Id.*, at 745.

*Anders'* injunction against casting appointed counsel in the role of an *amicus* who might "brief his case against his client" is best understood in light of *Ellis* v. *United States*, 356 U. S. 674 (1958) *(per curiam)*, on which *Anders* relied, where we concluded that defense counsel abdicated their role as advocates by arguing to the court that their client's appeal was meritless. After identifying a single "'possible' area of error," *Ellis* v. *United States*, 101 U. S. App. D. C. 386, 387, 249 F. 2d 478, 479 (1957) (en banc), as presumably *Anders* would require counsel to do, the "defense" memorandum proceeded to prove (not merely to announce) that "there was not such merit even in this aspect of the appeal as to warrant further prosecution of the appeal," and that therefore "no substantial question existed in this case." *Ibid.* (emphasis omitted). The Court of Appeals commended the defense counsel's conduct as faithful to their duty "to advise *the court* in this matter." *Id.*, at 386, 249 F. 2d, at 478 (emphasis in original). See also *ibid.* ("[C]ounsel should determine for the benefit of this court whether the case warranted review"); *id.*, at 387, 249 F. 2d, at 479 ("[C]ounsel appointed by the court to represent indigent defendants who wish to appeal their convictions owe an obligation to the court as well as to their clients"). We summarily vacated the judgment and remanded, roundly criticizing the role that the Court of Appeals encouraged counsel to play: "In this case, it appears that the two attorneys appointed by the Court of Appeals, performed essentially the role of *amici curiae*. But *repre-*

*sentation in the role of an advocate is required."*   356 U. S., at 675 (emphasis added).[1]

*Anders* and *Ellis* together carefully prescribe the contours of appointed counsel's constitutional duty upon concluding that an appeal lacks merit.   Appointed counsel must advocate anything in the record arguably supporting the client's position.   When counsel has nothing further to say in the client's defense, he or she should say no more.   At that point, an unadorned statement that counsel believes the appeal to be frivolous satisfies the appointed counsel's constitutional duty to the client and ethical duty to the court, see *Polk County*, 454 U. S., at 323, and any further discussion of the merits impermissibly casts defense counsel in the role of *amicus*.

## II

Wisconsin's Rule 809.32(1) forces appointed counsel to do exactly what we denounced in *Ellis* and *Anders*.   The Rule begins with the requirement, consistent with *Anders*, that appointed counsel "shall file with the court of appeals . . . a brief in which is stated anything in the record that might arguably support the appeal," but in the next breath it departs from *Anders'* prescription by requiring also "a discussion of why the issue lacks merit."   Wis. Rule App. Proc. 809.32(1). The Wisconsin Supreme Court, in language reminiscent of the Court of Appeals' opinion in *Ellis*, extolled the discussion requirement "as a significant administrative aid to the reviewing court [which] serves an informational function and, equally important, enables the court to operate in a more efficient, expeditious and cost-saving manner."   *Wisconsin ex*

---

[1] Viewed in that light, our statement in *Anders* that we "would not force appointed counsel to brief his case against his client," *Anders* v. *California*, 386 U. S. 738, 745 (1967), or to act as an *amicus curiae*, is directly responsive to Anders' argument that, notwithstanding *Ellis*, "[c]ounsel must convince the court that the issues are truly 'frivolous.'   This must be done in a documented memorandum which analyzes the facts and applicable law."   Brief for Petitioner in *Anders* v. *California*, O. T. 1966, No. 98, p. 16.

*rel. McCoy* v. *Wisconsin Court of Appeals,* 137 Wis. 2d 90, 103, 403 N. W. 2d 449, 455 (1987). As in *Ellis,* the foregoing functions, however expedient they might be, describe a role ordinarily filled not by defense counsel, but by *amici* and the State's attorney. Under the Rule, then, a court-appointed counsel no longer "acts in the role of an active advocate in behalf of his client." *Anders,* 386 U. S., at 744. Far from providing the accused "Assistance of Counsel for his defense," as the Sixth Amendment mandates, the Rule explicitly "force[s] appointed counsel to brief his case against his client," *id.,* at 745. No less than the no-merit briefs we disapproved in *Ellis,* the no-merit discussion undermines the "very premise of our adversary system of criminal justice," *Herring,* 422 U. S., at 862.

The Court's curious conclusion that counsel nevertheless does not act as an *amicus curiae* when he or she files the requisite no-merit discussion is rooted in a single observation: that the requirement poses little danger that counsel, in deciding whether "to pursue the appeal," will improperly "weig[h] the probability of success against the time burdens on the court and the attorney." *Ante,* at 443 (citation omitted). But declining to burden the court with another case or another brief is not the only, nor even the most common, sense in which counsel act as *amici,* and is assuredly not the meaning that *Anders* and *Ellis* ascribed to the term. The most common definition of *"amicus curiae"* is "[a] person with a strong interest in or views on the subject matter of an action [who] petition[s] the court for permission to file a brief . . . to suggest a rationale consistent with its own views." Black's Law Dictionary 75 (5th ed., 1979). And as the numerous passages quoted above from *Ellis* and *Anders* make clear, the Court's reference to *amici* focused more on the concern that counsel might advocate against their client than on the concern that they might not advocate at all (a possibility that *Anders* itself prohibits). Thus, the Wisconsin Rule falls

squarely within our flat prohibition against casting defense counsel in the role of *amici*.

Not only does Wisconsin's Rule impinge upon the right to counsel, but—contrary to our admonition that "there can be no equal justice where the kind of appeal a man enjoys 'depends on the amount of money he has,'" *Douglas*, 372 U. S., at 355 (quoting *Griffin* v. *Illinois*, 351 U. S. 12, 19 (1956) (plurality opinion))—it does so in manner that ensures the poor will not have "the same rights and opportunities on appeal" as the rich. *Anders, supra,* at 745. Central to the Court's contrary position is its repeated observation that neither rich nor poor are entitled to pursue a frivolous appeal. See *ante,* at 436, 438–439. At issue here, however, is not the indigent's right "'to pester a court with frivolous arguments . . . that cannot conceivably persuade the court,'" *ante,* at 436 (citation omitted), nor the right to a state-funded "unscrupulous attorney" to do so, *ante,* at 439, n. 12, but the indigent's right to the usual adversary appellate process to test the validity of a conviction even though a single attorney unilaterally concludes that the appeal lacks merit. Legal issues do not come prepackaged with the labels "frivolous" or "arguably meritorious." If such characterizations were typically unanimous or uncontroversial, we could freely permit defense counsel to decide finally whether an appeal should proceed, but see *Lane* v. *Brown*, 372 U. S. 477 (1963), or to advise the court without any advocacy on their clients' behalf that an appeal is frivolous, but see *Anders, supra; Ellis, supra.* It by no means impugns the legal profession's integrity to acknowledge that reasonable attorneys can differ as to whether a particular issue is arguably meritorious.

Therein lies the Wisconsin Rule's inequity. When retained counsel in Wisconsin declines to appeal a case on the ground that he or she believes the appeal to be frivolous, the wealthy client can always seek a second opinion and might well find a lawyer who in good conscience believes it to have arguable merit. In no event, however, will any lawyer file in the

wealthy client's name a brief that undercuts his or her position. In contrast, when appointed counsel harbors the same belief, the indigent client has no recourse to a second opinion, and (unless he or she withdraws the appeal) must respond in court to the arguments of his or her own defender. An indigent defendant who accepts the State's offer of counsel must submit to the state-imposed risk that counsel will advocate against him or her upon unilaterally concluding that the appeal is frivolous, but the defendant with means to purchase a defender whose allegiance is undivided need never fear such treachery. When retained counsel "actively represent conflicting interests" we deride them as "ineffective," *Cuyler* v. *Sullivan*, 446 U. S. 335, 350 (1980); see *Wheat* v. *United States, ante,* p. 153, but when appointed counsel actively brief both sides of an appeal we congratulate them for achieving "substantial equality and fair procedure," *ante,* at 435.

The Court is left, then, to justify the inequality on the basis of an imagined distinction between the "typical advocate's brief in a criminal appeal" and the *Anders* brief. *Ante,* at 442.[2] It is true that the question presented to the court in an *Anders* brief (whether the appeal has arguable merit) differs from that presented in a brief on the merits (whether the accused should prevail). Any substantive difference between the two questions, however, does not in itself suggest, as the Court maintains, that counsel's advocacy on behalf of a client should be any less forceful in the one context than in the other. *Anders* itself makes clear that the role of counsel writing an *Anders* brief, like his or her role in a "typical advocate's brief," is to advocate. The no-merit letter filed by Anders' lawyer was flawed because it "did not furnish [An-

---

[2] As a preliminary matter, the Court's contention that the brief prescribed by Wisconsin law "is not a substitute for an advocate's brief on the merits," *ante,* at 444; see also *ante,* at 439–440, n. 13, is belied by the reality that such briefs usually culminate not simply in a grant of counsel's motion to withdraw, but in an affirmance of the conviction, see Wis. Rule App. Proc. 809.32(3).

ders] with counsel acting *in the role of an advocate* nor did it provide that full consideration and resolution of the matter as is obtained when counsel is acting in that capacity," *Anders,* 386 U. S., at 743 (emphasis added). The *Anders* brief is supposed to aid the reviewing court, but not in the sense that an *amicus* does. Rather the *Anders* brief was designed to spare the reviewing court from having to sift through "only the cold record . . . *without the help of an advocate,*" *id.,* at 745 (emphasis added).

To be sure, the *Anders* brief, unlike the typical brief on the merits, concludes with an assertion—"This appeal is frivolous"—that is contrary to the client's interest. It does not, however, follow that "no constitutional deprivation occurs when the attorney explains the basis for that conclusion." *Ante,* at 443. Such a conclusion, the Court seems to agree, is no different in type from other statements that defense attorneys are obligated to make against their clients' best interests, such as an admission that the weight of authority is against the client's position or that certain facts belie the client's case. See *ante,* at 440–441, and n. 14. No one would suppose that the limited obligation to cite contrary law and facts translates into a general obligation to expose all the weaknesses in a client's case, or even to explain why the particular law or facts cited disfavor the defense. Merely because counsel constitutionally may take slight deviations from the role of advancing the client's undivided interests does not mean that counsel constitutionally may entirely abandon that role, nor even that counsel may depart from that role any more than is absolutely necessary to satisfy the ethical obligation.[3]

---

[3] The Court creatively recharacterizes the *Anders* brief as designed to "provide the appellate courts with a basis for determining whether appointed counsel have fully performed their duty to support their clients' appeals to the best of their ability," *ante,* at 439. In the first place, *Anders* did not focus on whether the lawyer is a careful defender or a clear thinker. The appellate court may not merely examine counsel's brief and rubber-

Neither the Court nor the State identifies any interest that demands so drastic a departure from defense counsel's "overarching duty," *Strickland*, 466 U. S., at 688, to advocate "the undivided interests of his client," *Ferri* v. *Ackerman*, 444 U. S., at 204. No doubt, a counsel's refutation of the argument that he or she deems frivolous lightens the court's load, and in some circumstances might even expose an analytical flaw that is not apparent from counsel's bare conclusion. But an issue that is so clearly without merit as to be frivolous should reveal itself to the court as such with minimal research and no guidance. One might perhaps hypothesize an issue whose frivolity is so elusive as to require refutation. In such an event, as in every other stage of a criminal prosecution, the Wisconsin Supreme Court was surely correct that "[t]he court will be better equipped to make the correct decision about the potential merits of the appeal if it has before it not only the authorities which might favor an appeal, but also the authorities which might militate against it." 137 Wis. 2d, at 100–101, 403 N. W. 2d, at 454. Never before, however, have we permitted a court to further the interest in having "powerful statements on both sides of [a] question" by compelling a single advocate to take both sides. *Cronic*, 466 U. S., at 655 (footnotes and internal quotations omitted). There is no more reason to command defense counsel to refute defense arguments they deem frivolous than there is to force them to refute their own arguments on the merits of nonfrivolous appeals. In either situation, the State has a corps of lawyers ready and able to perform that task.

---

stamp his or her conclusion; it merely uses the brief as a guide in order to conduct an independent inquiry into the otherwise "cold record." *Anders*, 386 U. S., at 745. More importantly, the recharacterization proves little. One might just as easily recharacterize the inquiry on the merits of an appeal as whether counsel correctly concluded that the client should prevail. Yet this recharacterization would not impose on defense counsel an obligation to rebut their own arguments on the merits.

## III

The Court purports to leave unscathed the constitutional axiom that appellate counsel "must play the role of an active advocate, rather than a mere friend of the court," *Evitts*, 469 U. S., at 394. Our disagreement boils down to whether defense counsel who details for a court why he or she believes a client's appeal is frivolous befriends the client or the court. The Court looks at Wisconsin's regime and sees a friend of the client who "assur[es] that the constitutional rights of indigent defendants are scrupulously honored." *Ante*, at 444. I look at the same regime and see a friend of the court whose advocacy is so damning that the prosecutor never responds. See Tr. of Oral Arg. 13–14, 30. Either way, with friends like that, the indigent criminal appellant is truly alone.