**In re ORDER TO SHOW CAUSE.**

**No. C–89–3024–CAL.**

United States District Court,
N.D. California.

May 8, 1990.

Matthew Pavone, Asst. U.S. Atty., San Francisco, Cal., for petitioner.

Keker & Brockett, John W. Keker, Christopher J. Hunt, Jordan & Osterhoudt, William L. Osterhoudt, Susan B. Jordan, San Francisco, Cal., for respondents.

## AMENDED OPINION AND ORDER DISCHARGING ORDER TO SHOW CAUSE

LEGGE, District Judge.

This is a proceeding on an order to show cause, issued by another judge of this court, as to why sanctions should not be imposed upon the eleven respondent attorneys. The order to show cause arises from a criminal case in this court, *United States of America v. Rudolph Henderson, et al.,* No. CR–87–0398 (N.D.Cal. filed June 4, 1987). That was a multi-defendant drug prosecution, in which these respondent attorneys were counsel for the defendants.

### I.

Shortly before the scheduled trial of that case, respondents made a motion to recuse the trial judge under 28 U.S.C. § 455 (1982). The motion was based in part on the alleged personal friendship between the trial judge and the prosecuting attorney, and on the possibility of *ex parte* submissions having been made by the prosecutor. The motion was also made upon the ground that the trial judge had allegedly made statements to one Ora Green, which if true would indicate bias by the trial judge against the defendants.

The recusal motion was addressed to the trial judge, and was signed by respondents. It was supported by a joint affidavit of the defendants, and by the declaration of respondents' investigator. The motion was opposed by the United States, and the United States conducted an investigation in connection with that opposition, including an interview with Ora Green. Green recanted the statements attributed to her, and the trial judge signed a declaration unequivocally denying any such conversations with Green. The trial judge referred the portion of the recusal motion based on the statements of Green to another judge of this court for resolution. He denied the recusal motion.

It is now clear that the statements alleged to have been made by the trial judge to Green were not made. To that extent, the motion to recuse the trial judge contained false information.

At the conclusion of the criminal case, the trial judge then issued this order to show cause. These proceedings were then assigned to the undersigned judge, under the assignment plan of this court.

### II.

The order to show cause was issued by the trial judge under the authority of Rule 7–105 of the California Rules of Professional Conduct, which was in effect at the time of the acts of respondents that are in issue here.[1] It was also issued under Local Rule 110–3 of this court. By virtue of that rule, each attorney practicing before this court agrees that his/her professional conduct will be governed by certain standards. And Local Rules 110–6 and 110–7 define certain powers and procedures of this court in matters of discipline of attorneys. This court's power of discipline is also an inherent power of a United States District Court. *In Re Yagman,* 803 F.2d 1085 (9th Cir.1986).

### III.

Respondents then moved to discharge the order to show cause as a matter of law. In a written but unpublished order dated September 29, 1989, this court denied that motion and determined that further proceedings were required. An evidentiary hearing was then held, at which one re-

---

**1.** A new rule, Section 5–200 dealing with similar subjects, went into effect on May 27, 1989.

spondent testified. This court requested further briefing on the legal standard to be applied to the conduct of respondents. Briefs, reporter's transcripts, and further documentary evidence were submitted.

This court is now of the opinion, based upon the legal standards governing the conduct of respondents as criminal defense attorneys and based upon the facts developed in the record,[2] that the order to show cause should be discharged for the reasons discussed below. Respondents' conduct satisfied their duty of reasonable inquiry, even though their assertions to and about the trial judge were wrong.

### IV.

In moving for recusal of the trial judge, respondents were exercising legal rights of their clients. Both 28 U.S.C. § 144 (1982) and 28 U.S.C. § 455 (1982) define standards and procedures for recusal.[3]

A United States District Judge is not, and should not be, immune from questions about impartiality or other misconduct. The lack of such immunity is amply demonstrated by the mere existence of Sections 144 and 455. And indeed, *if* the trial judge had made the statements asserted here, there was certainly good reason for respondents to be concerned about bias and to consider recusal. *See United States v. Cooper*, 872 F.2d 1, 3–4 (1st Cir.1989).

On the other hand, a motion to recuse a judge is not just another procedural or evidentiary motion. It is a direct attack on one of the basic principles of our judicial system, the impartiality of trial courts. If such a motion is made when a case is close to trial, it necessarily calls into question the administration of justice. And the making of such a motion impacts unfavorably upon the public's perception of the administration of justice. *See Ramirez v. The State Bar of California*, 28 Cal.3d 402, 414, 619 P.2d 399, 169 Cal.Rptr. 206 (1980), and Cal.

Bus. & Prof. § 6068(b) and (d) (West 1974 & Supp.1990).

The question to be answered is what standard of conduct respondents had to meet before bringing such a direct attack on the judicial process. This is in reality two questions: What is the standard? And, did respondents meet that standard here?

### V.

In replying to those questions, respondents point to the high duties of vigorous representation which they owed to their clients. Respondents are correct. Attorneys owe high duties to their clients to defend their cases fully, vigorously, and even with arguments which might be offensive or ultimately unsuccessful. This is particularly true in criminal cases, where the clients' liberties are at stake, and where the adequacy of the attorneys' representation can raise constitutional issues. But the obligations which respondents owed to their clients does not answer the dilemma. It merely states the dilemma.

The other side of the dilemma is that defense attorneys are also officers of the court and owe duties, which can be even higher duties, to the administration of justice. That proposition has been reemphasized by the United States Supreme Court. In *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1985), the Court said:

> [W]e recognize counsel's duty of loyalty and his 'overarching duty to advocate the defendant's cause.' Plainly, that duty is limited to legitimate, lawful conduct compatible with the very nature of a trial as a search for truth.

*Id.* (Quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984)).

And:

> These standards confirm that the legal profession has accepted that an attor-

---

**2.** The trial judge did not have access to all of this information at the time of the issuance of the order to show cause. Indeed, factual and legal development is the purpose of holding a hearing on an order to show cause.

**3.** Respondents argued in their motion about the distinction between the two sections. In the order of September 29, 1989, this court noted the distinctions but nevertheless concluded that both sections require some minimum standard to be met by the moving parties.

ney's ethical duty to advance the interest of his client is limited by an equally solemn duty to comply with the law and standards of professional conduct.... (p. 168, 106 S.Ct. at 995).

*Id.* at 168, 106 S.Ct. at 995.

In *McCoy v. Court of Appeals,* 486 U.S. 429, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988), the Supreme Court said:

Ethical considerations and rules of court prevent counsel from making dilatory motions, adducing inadmissible or perjured evidence, or advancing frivolous or improper arguments....

*Id.* at 435, 108 S.Ct. at 1900.

## VI.

■ Mere quotation of those general principles is not enough here. This court must apply the general to the specific, and define respondents' required standard of conduct when making a motion to recuse a trial judge.

Only one recent case has addressed that question in the context of a criminal case. In *United States v. Cooper,* 872 F.2d 1 (1st Cir.1989), a defense attorney was charged with a violation of the state code of professional responsibility for a false accusation made against a trial judge. The appellate court defined the attorney's responsibilities as being (1) to act in good faith and (2) to make no factual misrepresentations. The court said:

Yet the fair administration of justice requires that lawyers challenge a judge's purported impartiality when facts arise which suggest the judge has exhibited bias or prejudice. The appropriate mechanism for such a challenge is a motion to recuse.... Indeed he has a duty to his client and to our system of justice to jump through those [procedural] hoops *so long as* his affidavit in support of the motion to recuse was made in good faith and made no factual misrepresentations.

*Id.* at 4.

Other relevant cases have arisen in the context of civil litigation. The court notes this distinction between civil and criminal cases for two reasons: (1) The consequences of the obligations which attorneys owe to their clients in criminal cases, noted above. And (2) the challenges to attorneys' conduct in civil cases have usually arisen under Fed.R.Civ.P. 11, and there is no directly comparable Rule of Criminal Procedure.

Two federal cases concerning false accusations against judges have arisen from civil cases and involved Rule 11. In *In Re Kelly,* 808 F.2d 549 (7th Cir.1986) the appellate court defined the duties of counsel to require the making of inquiry and the making of statements which must be scrupulously accurate. *Maier v. Orr,* 758 F.2d 1578 (Fed.Cir.1985) defined the duty in terms of reasonable inquiry.

A decision of the Supreme Court of the State of California is also pertinent. *Ramirez v. The State Bar of California,* 28 Cal.3d 402, 619 P.2d 399, 169 Cal.Rptr. 206 (1980), involved a charge that an attorney had violated his duties under the California Business and Professions Code in a civil case by bringing an improper accusation against the judge. The Supreme Court said that an attorney had to make some degree of investigation before making charges against a court, and it defined the duty in terms of reckless disregard (p. 411). California authority is relevant here because attorneys admitted to the bar of this court must be members of the State Bar, and because Local Rules 110–3 and 110–6 incorporate the Rules of Professional Conduct of the State Bar.

The Ninth Circuit has recently dealt with the subject of attorney discipline in several cases. All arose from civil proceedings and involved primarily Rule 11 and other local rules. But none dealt specifically with a challenge made against the trial judge. In *Business Guides v. Chromatic Communications Enterprises, Inc.,* 892 F.2d 802 (9th Cir.1989), the attorney submitted inaccurate information to a court in an injunction proceeding. The Ninth Circuit defined the standard of conduct as being an objective standard, and one that requires reasonable inquiry under the circumstances. In *Zambrano v. The City of Tustin,* 885 F.2d 1473 (9th Cir.1989), the issue was an attorney who was sanctioned because he had

not been admitted to practice in the district. The appellate court stated that he could not be sanctioned for negligence, mistake, inadvertence, or error of judgment. Rather, the conduct must involve recklessness, gross negligence, willful misconduct, or bad faith. *Id.* at 1480–81. In *In Re Curl,* 803 F.2d 1004 (9th Cir.1986), an attorney had made a false statement to a court regarding the impact of a foreign judgment. The court defined the standard of conduct in terms of misrepresentation or recklessness. In *Matter of Yagman,* 796 F.2d 1165 (9th Cir.) *reh'g denied* 803 F.2d 1085 (1986), an attorney was accused of improper conduct recurring throughout the pretrial and trial proceedings. The Ninth Circuit defined the standard of conduct in terms of reasonableness and the absence of bad faith.

Some principles can be synthesized from the above decisions, particularly those of the Ninth Circuit. First, counsel's conduct is measured against an objective standard, not a subjective standard. Therefore, while counsel would certainly breach their duty by acting in bad faith, mere good faith is not enough. Second, counsel must not engage in intentional misconduct, such as a knowing falsehood, a misrepresentation, or other willful misconduct. Third, counsel may not be sanctioned for conduct that is merely negligent, mistaken, inadvertent, or an error in judgment. Fourth, there is a middle gray area, where counsel can be sanctioned if their conduct was reckless or grossly negligent. This court believes that these principles are applicable in both civil and criminal cases, although their application must depend upon each case.

How do those standards apply to the charges in this proceeding? The conduct charged here is the making of a recusal motion based upon statements of a witness which were untrue. There is no evidence that counsel *knew* that Green's alleged statements were false, and there is no indication of intentional misrepresentation by counsel. The question is whether, using an objective standard of conduct, counsel made reasonable inquiry about Green's statements so that their conduct was not reckless or grossly negligent. Respondents contend that their duty is simply to not make a statement which is "knowingly false" or "with reckless disregard as to its truth or falsity." This court believes that that definition of the duty of defense counsel is too narrow under the law of this circuit. On the other hand, this court does not believe that the standard of *In Re Kelly,* 808 F.2d 549, 552 (7th Cir.1986), that statements must be "scrupulously accurate" is in accordance with the standard of this circuit. As the Ninth Circuit stated in *Business Guides v. Chromatic Communications Enterprises, Inc.,* 892 F.2d 802, 812 (9th Cir.1989) the duty of reasonable inquiry is what is reasonable under the circumstances.

The duty of reasonable inquiry is not easy in criminal cases. Defense counsel may be confronted with numerous statements by their clients or potential witnesses which are of doubtful veracity. It is not the responsibility of defense counsel to perform the role of the court or the jury to decide ultimate truth. Counsel are obligated to present evidence which supports their clients' innocence. And counsel cannot become too involved in fact-finding personally, because they might then be called as unwilling witnesses for or against their clients' positions. But it is not enough for defense counsel simply to state those problems. There is some point at which the duties of counsel to their clients are outweighed by their duties to the court and to the administration of justice. It is not enough that defense counsel simply have *some* basis for an assertion. It is not enough that *someone*—of whatever reliability or accuracy—said so. This court believes that counsel have some objective responsibility involving the accuracy of information before it is presented to a court, and that their duty is one of reasonable inquiry under the circumstances.

The narrow question here is whether respondents made reasonable inquiry into Green's purported statements before offering them as one basis for the motion to recuse the trial judge.

## VII.

In order to answer that question, the court heard the testimony of the respondent who was primarily responsible for the preparation of the recusal motion ("the attorney"), and has reviewed numerous exhibits, declarations[4] and transcripts. The court finds and concludes from the evidentiary record that respondents did make reasonable inquiry regarding Green's statements.

As stated, respondents were representing numerous defendants indicted in *United States v. Henderson.* They assigned three of the defense counsel to the issue of a possible recusal of the trial judge. Within that delegation, the attorney had the primary responsibility for assembling the evidence and the motion. He is an attorney experienced in criminal cases. He was formerly an assistant United States Attorney who prosecuted many cases, and he has had extensive experience in private practice in the defense of criminal cases. The other respondents are also experienced and competent attorneys in the defense of criminal cases.

The issue of the trial judge's alleged statements to Green first arose when the attorney's client Becarro advised him that he had heard, albeit through compounded hearsay, that the trial judge had made statements to Green which would indicate the trial judge's bias. The information trail was: Green to Lumford/McFarland to defendant Henderson to defendant Becarro to the attorney. After conferring with his co-counsel, the attorney asked that an investigator make an inquiry. Co-counsel had heard the same hearsay and they directed Barry Simon, the investigator for one of the co-counsel, to do so. Simon was a licensed investigator whom defense counsel had used in other cases. Counsel had personal experience with him for several years, and believed him to be competent and honest.

Simon interviewed Lumford/McFarland and obtained essentially the same information about Green's statements. The information trail was then shortened: Green to Lumford/McFarland to Simon to defense counsel. Simon was then instructed to interview Green. It is apparent that counsel did not simply accept the first or the second hearsay reports, but directed their investigator to conduct a further interview with Green personally. Simon did so with Lumford/McFarland also present. The method of the conduct of that interview and the information Green allegedly provided is open to question. But the investigator did report to defense counsel that Green said that the trial judge had made statements to her which if true would indicate bias. The information trail was thereby shortened further: Green to Simon to defense counsel.

This court wishes to reemphasize that the statements allegedly made by Green were untrue. But Green's alleged statements were reported by the investigator to counsel. They were included in a written report given by the investigator to defense counsel. The United States questions whether that written report was in fact in existence before the recusal motion was filed, or whether it was prepared after the order to show cause. The government bases its argument on the statement of an FBI agent regarding his interview of Simon. The agent states that Simon said that he did not write any report of his interview with Green. However, the agent's statement was not prepared until February 9, 1990, at the time of the submission of this proceeding, and concerned an interview of Simon in January 1989. On the other hand, the attorney testified that he had Simon's written report before preparing the recusal motion, and his testimony is supported by the declaration of another defense attorney. The court concludes, based upon the weight of the evidence, that a report by Simon of his interview with Green was prepared and was in the hands of defense counsel before preparation of the recusal motion.

---

4. The motion filed on February 15, 1990 to admit the declaration of one of the defense attorneys is granted.

Counsel therefore had two reports from Simon before the recusal motion was made: (1) the information given to Simon by Lumford/McFarland, and (2) the interview of Green by Simon, purportedly reporting what Green said in his presence. The investigator prepared a declaration, albeit in brief form, for use in the recusal motion.

The Green matter was one of several alleged grounds stated in the motion for the requested recusal. After the attorney drafted the motion, he circulated it among co-counsel, who reviewed and ultimately signed it.

The court believes that these respondents' conduct constituted reasonable inquiry under the circumstances. They did not prepare the recusal motion when they first received the alleged information. Rather, they directed their investigator to interview Green. He did so, and produced the resulting but erroneous information. Under the circumstances, it was reasonable for counsel not to interview Green personally, in order to avoid being called as witnesses, either for or against their clients, which would place their credibility in issue. It is of course possible, now that we know the untruth of the alleged statements and have the perspective of hindsight, to say that respondents *could* have done other things which would have established that the information was untrue. But that is not the test. The court concludes that the use of the investigator to obtain a statement from Green, and reliance upon the investigator's report, with some basis for believing the experience and accuracy of the investigator, was reasonable inquiry under the circumstances. And the motion was not filed for the purpose of delaying the scheduled trial; it was prepared as soon as the information was reasonably available.

### VIII.

█ What of the position of the respondents who signed the motion, but did not actually participate in its investigation or preparation?

Because of the number of defendants and counsel, they divided the responsibilities for the defense preparations. Such a division of responsibilities is a worthwhile objective in the administration of justice. The personal participation of each defense counsel in each element of the defense preparations would unduly delay all multi-defendant cases. The principles of case management used in civil litigation could well be used in multi-defendant criminal cases. Consistent with the constitutional rights of each criminal defendant, both time savings and a higher degree of focused concentration on issues are accomplished by some delegation of responsibilities. Indeed, the trial judge suggested some division of responsibilities in the *Henderson* case.

In connection with the motion for recusal, the other counsel apparently did nothing more than review the motion in draft form and then sign it in final form. From the view of hindsight, some additional inquiry by them would have been helpful. Delegation is not abdication. But this court does not believe that in the setting of a multi-defendant case, with competent counsel preparing a joint motion for the defense, and with it being backed by information from an independent investigator, that the other counsel breached any professional responsibility to the court. They were obligated to review the proposed motion. If they in fact had information *contrary* to that contained in the motion, they had an obligation to bring that information to light, or at least to direct further reasonable inquiry. However, there is no indication of such information here. And because of the nature of the issue at the time (that is, whether the trial judge had made the statements to Green), it is highly unlikely that any other counsel could have such contrary information.

The court therefore concludes that the other counsel, having delegated the responsibility for the motion to other competent defense counsel, and having no reason to doubt the accuracy of the information asserted in the motion, met their professional responsibilities to the court.

### IX.

It will therefore be ordered that the order to show cause against respondents be

discharged. However, the court hopes that the criminal defense bar will not misunderstand that result. The duties which defense attorneys owe to their clients are high. But they also owe duties to the court, which this court has attempted to articulate above. If the conduct of any counsel does not meet those duties, counsel is subject to sanctions. As well summarized by the court in *U.S. v. Cooper*, 872 F.2d 1 (1st Cir.1989):

> We conclude this saga with an emphatic reminder to counsel that they indeed are subject to disciplinary sanctions under relevant codes and rules of professional conduct when their behavior in the course of representing a client offends these professional standards. We do not endorse the notion that an attorney can do or say anything and everything imaginable within the course of client representation under the guise of vigorous representation of his client. However, the fair administration of justice provides a valuable right to challenge in good faith the neutrality of a judge who appears to be biased against a party. Lawyers using professional care, circumspection and discretion in exercising that right need not be apprehensive of chastisement or penalties for having the advocative courage to raise such a sensitive issue to assure the client's right to a fair trial and the integrity of our system for administering justice.

*Id.* at 5.

IT IS ORDERED that the order to show cause is discharged.[5]

---

**5.** The court expresses its appreciation to the Office of the United States Attorney for its assistance in this proceeding. The conflicts between prosecutors and defenders are necessarily ongoing ones in the administration of criminal justice. Taking on responsibilities in this proceeding added to the prosecutor's burdens and conflicts. The work of the U.S. Attorney's Office in this proceeding was diligent and professional. The differences between the U.S. Attorney's Office and the respondents, albeit expressed with some hyperbola on both sides, were acceptable interpretations of the law and the facts in the context of an adversary proceeding.