Estella Washington v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-279-CR

     ESTELLA WASHINGTON,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 87th District Court
Freestone County, Texas
Trial Court # 97-197-CR
                                                                                                              

MEMORANDUM OPINION
                                                                                                               

      Estella Washington pled guilty to the felony offense of delivery of a controlled substance. 
Although she had requested to be placed on probation, the trial court sentenced Washington to 180
days in jail. Washington filed her written notice of appeal ten days later.
      Counsel has filed an Anders brief. See Anders v. California, 386 U.S. 738, 87 S.Ct. 1396,
18 L.Ed.2d 493 (1967); Wilson v. State, 955 S.W.2d 693 (Tex. App.—Waco 1997, order) (order
discussing procedures for Anders appeal, revisiting Johnson v. State, 885 S.W.2d 641, 646 (Tex.
App.—Waco 1994, order)). Counsel states that he reviewed the record, the sentence received by
Washington and the factual basis for the sentence. He is of the opinion that the record reflects no
reversible error and presents no “non-frivolous” questions. We have independently reviewed the
record and counsel’s discussion of Washington’s potential claims. We are satisfied that counsel
has diligently searched the record for any arguable appellate claim. McCoy v. Court of Appeals
of Wisconsin Dist. 1, 486 U.S. 429, 442, 108 S.Ct. 1895, 1904, 100 L.Ed.2d 440 (1988). We
have determined that counsel correctly concluded that the appeal is frivolous. Id.
      We required Washington’s counsel to advise Washington that she had the right to review the
record and to file a written response on her own behalf. We also advised Washington by letter
of these rights. Washington never filed a response. We note, however, that at about the same
time her notice of appeal was filed, Washington wrote a letter to the trial court complaining that
her plea was involuntary because her attorney forced her to plead guilty. We have given
additional attention to this issue in light of the record before us and have found no evidence in the
record to support Washington’s claim.
      Because we have no viable issues to consider, the judgment is affirmed. We simultaneously
grant counsel's motion to withdraw. Id. 
                                                                               PER CURIAM
 
Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed August 25, 1999
Do not publish 



t-align: justify">                                                                                                    

      Joel McCoy appeals his conviction for murder. A jury found McCoy guilty and assessed
punishment at thirty-seven and a half years in prison. In two points of error, he complains that
the trial court improperly excluded evidence relevant to his self-defense theory.
      McCoy testified that he went to the East Side Cafe in Cleburne on February 13, 1993. 
According to McCoy, he observed a man who was later identified as Darion Scott smoking crack
cocaine and "acting like he didn't care about nothing." McCoy was engaged in conversation with
a girl, when Scott "came and threw her out of the way." McCoy testified that he did not know
she was Scott's sister. McCoy and Scott "exchanged some words," and, according to McCoy,
Scott "pulled his coat like he was going to pull something out." McCoy testified that he "walked
off right there."
      After the confrontation, McCoy took a jacket and a M-11 pistol from a friend's car. 
According to McCoy, when Scott noticed that he had on the jacket and could see the bulge under
the jacket, Scott said, "I'm going to kill you, mother fucker . . . I'm going to get my gun." 
McCoy testified that Scott, who was holding a can of malt liquor in his hand, then went to the car
he had arrived in. According to McCoy, he was in fear for his life. McCoy also testified that
Scott was very violent and angry, that his eyes were "wide open and glassy looking," and that he
was "real paranoid, jumping at everything." According to McCoy, Scott placed the beer can on
top of the car, opened the front door, and reached in "like he was reaching for a weapon." When
Scott shut the door and looked up, McCoy pulled the gun out of his jacket and began firing at
Scott.
      On cross-examination, McCoy admitted that, with each shot, he intended to kill Scott. When
asked whether he knew that what Scott was smoking was crack cocaine, McCoy testified, "Yes,
I do, sir. I saw the lab reports." Although the trial court excused the jury and held McCoy in
contempt for violating a pretrial motion in limine, the jury was never instructed to disregard
McCoy's testimony concerning the lab results. After the jury returned, McCoy also acknowledged
that he could have retreated on several occasions before he shot Scott, but he chose not to walk
away because he saw he "wasn't going to make it." He also admitted to shooting Scott after he
fell to the ground. Because McCoy was not sure if the first shot hit Scott, he was still "a little bit"
afraid—enough to "put four more bullets in him."
      Dr. Arthur Raines, the medical examiner who performed the autopsy on the victim, testified
in the presence of the jury that he instructed Joe Rigsby, the medical investigator who assisted him
in the autopsy, to draw blood and urine samples from the victim. However, the trial court
excluded Dr. Raines' testimony that the lab report from the urinalysis indicated alcohol, cocaine,
and cannabinoids were present in Scott's urine.
      By bill of exception McCoy also offered the testimony of Joe Rigsby, the medical investigator
who drew a sample of urine from the victim; Crystal Underwood, the histology lab technician who
prepared the sample for transport to the testing lab; and Nga Hoang, the medical technologist who
performed the chemical analysis on the sample. Hoang testified, out of the presence of the jury,
that he found .20 percent alcohol, as well as pure cocaine and ethylcocaine, in the urine sample. 
According to Hoang, the presence of pure cocaine in the bladder indicated that Scott consumed
the cocaine within the last seven or eight hours of his life.
      John Castle, a forensic toxicologist, also testified outside the presence of the jury that a person
with the amount of alcohol, pure cocaine, and ethylcocaine indicated by the lab results would be
a violent, aggressive person expressing paranoia, extreme paranoia, fright, belligerence, and
experiencing increased respiration and heart rate, as well as delusions and possibly hallucinations. 
According to Castle, the level of cocaine present in the sample would indicate that the person
would have no logical ability and would not be able to distinguish between reality and fantasy. 
      Although the trial court excluded any testimony based on the results of the urinalysis, Castle
was allowed to testify, in the presence of the jury, about the effects of alcohol and cocaine on the
behavior of individuals generally. Castle testified that a person on crack cocaine and alcohol at
the same time would experience very abnormal paranoia. In response to a hypothetical question
posed by the defense attorney, Castle also testified that, assuming a person is observed smoking
crack cocaine and consuming alcohol, if that person came up and said, "I'm going to kill you,"
he would believe that person. According to Castle, if a person consumes crack cocaine and
alcohol, he almost always loses his logical ability. Furthermore, almost everybody would perceive
the abnormal effects of the combined consumption of crack cocaine and alcohol on that person. 
On cross-examination Castle acknowledged that a number of variables would affect the reaction
of a particular individual to the combined consumption of crack cocaine and alcohol. Finally, he
admitted that he could not tell the jury how Scott may have acted prior to his death.
      The State objected to the excluded testimony on the basis that the crack cocaine or alcohol
consumption of the victim was not relevant to any fact that was of consequence to the
determination of the case and that the probative value of the evidence was substantially outweighed
by the danger of unfair prejudice.


 The trial court excluded the evidence with the following
remarks:
The Court thinks there might be a place for that to be offered. As far as what I've heard
so far, I don't see that we've got anything to show that the deceased acted in anything
other than walking away. The most we've heard, at the very most, is a verbal
provocation which is totally inconsistent with what your people have testified to. I don't
think he accurately predicted how he could or could not act. If he had been violent and
took action against the Defendant, if there was any type of evidence—I think to allow the
jury to hear evidence, just about the deceased taking cocaine and alcohol, and without
him here to give his side of the story, whether it was done a day earlier or when it was,
seven or eight hours before, I don't think is fair. And that victim has rights, too, just like
the Defendant does. If I'm wrong, the appellate court can tell me. I'm going to exclude
it.

The trial court never indicated whether it was excluding the offered evidence based on the State's
objection to its relevance or, instead, because the probative value of the offered evidence was
substantially outweighed by the danger of unfair prejudice. Before the close of the evidence,
McCoy reoffered all the excluded testimony regarding the results of the urinalysis, but the trial
court overruled his objection to its exclusion.
      In point one McCoy contends that the trial court improperly excluded the offered evidence
under Rules 401 and 402 of the Texas Rules of Criminal Evidence. Finding a piece of evidence
"relevant" is the first step in a trial court's determination of whether the evidence should be
admitted before the jury because "[a]ll relevant evidence is admissible . . . . Evidence which is
not relevant is not admissible."


 "Relevant evidence" means evidence having any tendency to
make the existence of any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence.


 In deciding whether a particular
piece of evidence is relevant, a trial court should ask, "would a reasonable person, with some
experience in the real world believe that the particular piece of evidence is helpful in determining
the truth or falsity of any fact that is of consequence to the lawsuit."


 McCoy raised the issue of
self-defense by his testimony that Scott threatened him, that Scott was acting in a paranoid and
violent manner, and that Scott appeared to be reaching for a gun. Nevertheless, the trial court
apparently discounted this testimony because it was "totally inconsistent" with the testimony
offered by the State's witnesses. It is this factual dispute over Scott's behavior, however, which
makes the offered evidence of his combined consumption of crack cocaine and alcohol relevant
to McCoy's self-defense theory.



      To be considered relevant to McCoy's self-defense theory, the evidence of Scott's combined
consumption of crack cocaine and alcohol need not by itself prove that he was the aggressor; it is
sufficient if the evidence provides a small nudge toward proving Scott's aggressive behavior as
described by McCoy.


 Because the trial court erroneously concluded that the offered evidence was
not relevant to the facts of the case, we sustain point of error one.
      In point two McCoy contends that the trial court erred in excluding the offered evidence under
Rule 403. Under the rules of evidence, once the proponent of an item of evidence shows that the
evidence is logically relevant to some issue in the trial under Rule 401, it is admissible under Rule
402 unless the opponent of the evidence demonstrates that is should be excluded because of some
other provision, whether constitutional, statutory, or evidentiary.


 Because the evidence was
relevant to McCoy's self-defense theory, we must now determine "whether the danger of unfair
prejudice outweighs the probative value," assuming that the trial court's exclusion of the offered
evidence could be affirmed on that basis.


 Initially, we note that the Beaumont Court of Appeals
relied upon Rule 403, without any discussion of the criteria relevant to its application, to affirm
the exclusion of evidence that the deceased was under the influence of marihuana at the time of
the offense.


 The court in Babineaux, however, noted that the evidence before them was "devoid
of any suggestion that the use, smoking or ingestion of marihuana into an individual person's
system makes that person violent and aggressive."


 In this case, McCoy presented, by bill of
exception as well as by testimony in the presence of the jury, evidence that the combined
consumption of crack cocaine and alcohol would make a person violent and aggressive.
      Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant
evidence will be more probative than prejudicial.


 As a result, the opponent of the evidence must
ask the trial court to exclude the evidence on the ground that its probative value is nevertheless
substantially outweighed by the danger of unfair prejudice.


 We review the trial court's decision
to exclude evidence under Rule 403 by an abuse of discretion standard.


 Where relevant criteria,
viewed as objectively as possible, lead to the conclusion that the danger of unfair prejudice
substantially outweighed the probative value of the proffered evidence, the trial court should
exclude it.


 Relevant criteria include: that the ultimate issue was not seriously contested by the
opponent; that the proponent of the evidence had other convincing evidence to establish the
ultimate issue to which the evidence was relevant; or that the probative value of the evidence was
not, either alone or in combination, particularly compelling.



      The ultimate issue, self-defense, was vigorously contested. Whether Scott appeared paranoid
or violent, threatened McCoy, and was the first aggressor, was, by far, the most important topic
for jury argument. There was no more contested, and no more important, issue in this case.


 The
second Montgomery factor suggests the evidence of Scott's actual crack cocaine and alcohol
consumption should have been admitted because McCoy did not have a quantity of other
convincing evidence to corroborate McCoy's eyewitness testimony and Castle's expert testimony
that Scott was indeed aggressive and violent. Finally, the probative value of Castle's offered
testimony—that a person with the amount of alcohol, pure cocaine, and ethylcocaine indicated by
the lab results would be a violent, aggressive person expressing paranoia, extreme paranoia,
fright, belligerence, and experiencing increased respiration and heart rate, as well as delusions and
possibly hallucinations—was more compelling than Castle's admitted testimony about the affects
of alcohol and cocaine on the behavior of individuals generally. Because the relevant criteria for
the exclusion of evidence under Rule 403 were not present in this case, we hold that the trial court
abused its discretion in excluding the offered evidence.


 Accordingly we sustain point of error
two.
      Having concluded that the trial court erred in excluding the offered evidence under either
Rules 401 and 402 or Rule 403, we must now determine whether the error in excluding the
evidence was harmless under Rule 81(b)(2) of the Texas Rules of Appellate Procedure.



      In Bradford v. State, the Court of Criminal Appeals elaborated on the harmless error analysis:
In Harris v. State, 790 S.W.2d 568 (Tex.Cr.App. 1989), this Court articulated a coherent
standard for determining when an error is harmless. We do not determine harmlessness
simply by examining whether there exists overwhelming evidence to support the verdict,
but rather calculate as much as is possible the probable impact of the error on the jury in
light of the existence of the other evidence. Id. at 587. "A procedure for reaching this
determination should: first, isolate the error and all its effects, using the considerations
set out above and any other considerations suggested by the facts of an individual case;
and second, ask whether a rational trier of fact might have reached a different result if
the error and its effects had not resulted." Id. at 588. In performing the isolating
analysis, we examine the source and nature of the error, whether or to what extent it was
emphasized by the State, its probable collateral implications, and consider how much
weight a juror would probably place upon the error and determine whether declaring it
harmless would encourage the State to repeat it with impunity. Id. at 587.




      The error—the trial court's exclusion of the lab results—had the effect of depriving the jury
of Hoang's testimony concerning the specific levels of alcohol and drugs found in Scott's urine
sample and Castle's more specific testimony regarding the expected behavior of a person who had
consumed that amount of alcohol and cocaine. As previously discussed, McCoy testified in the
presence of the jury that he saw Scott smoking crack cocaine and consuming alcohol. McCoy also
testified that Scott was very violent and angry, that his eyes were "wide open and glassy looking,"
and that he was "real paranoid, jumping at everything." Furthermore, he testified that he knew
that what Scott was smoking was crack cocaine because he saw the lab reports. Castle was
allowed to testify, in the presence of the jury, about the effects of alcohol and cocaine on the
behavior of individuals generally. Finally, Castle's response to defense counsel's hypothetical
questions tied McCoy's testimony to the expert testimony concerning the combined consumption
of alcohol and cocaine.
      Following the Harris analysis, we must now consider whether a rational trier of fact might
have reached a different result if the error and its effects had not resulted. The nature of the
error—the exclusion of relevant evidence—was not something that the State could have emphasized
before the jury. Although, in determining whether the excluded evidence was relevant, the trial
court should not have considered the State's evidence controverting McCoy's testimony that Scott
was the aggressor, we must review the entire record when considering how much weight a juror
would probably place upon the excluded evidence. The overwhelming weight of the evidence
before the jury on McCoy's self-defense theory suggests that Scott was not the aggressor, that
McCoy had several opportunities to leave the scene after the initial confrontation, and that McCoy
pursued Scott with a semi-automatic weapon while Scott was attempting to leave, firing at him
from close range. Finally, holding that the error was harmless will not encourage the State to
repeat it with impunity—this is not a case of improper prosecutorial conduct before the jury. 
Therefore, we find that the trial court's error in excluding the evidence was harmless under the
Harris analysis.


 Because we determine beyond a reasonable doubt that the error made no
contribution to the conviction or punishment, we affirm the judgment.



 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed February 2, 1994
Do not publish