IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JUNIOR THELEMARQUE, | § | |
| | § | |
| Defendant Below- | § | No. 225, 2015 |
| Appellant, | § | |
| | § | |
| v. | § | Court Below—Superior Court |
| | § | of the State of Delaware, |
| STATE OF DELAWARE, | § | |
| | § | Cr. ID 1409001473 |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: December 2, 2015
Decided: February 11, 2016

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## O R D E R

This 11th day of February 2016, upon consideration of the appellant's Supreme Court Rule 26(c) brief, his attorney's motion to withdraw, and the State's response thereto, it appears to the Court that:

(1)    A Superior Court jury convicted the defendant-appellant, Junior Thelemarque, of Assault in the Second Degree. The Superior Court sentenced Thelemarque to eight years at Level V incarceration, to be suspended after serving three years in prison for two years at Level III probation. This is Thelemarque's direct appeal.

(2)    Thelemarque's counsel on appeal has filed a brief and a motion to withdraw under Rule 26(c). Thelemarque's counsel asserts that, based

upon a complete and careful examination of the record, there are no arguably appealable issues. By letter, Thelemarque's attorney informed him of the provisions of Rule 26(c) and provided Thelemarque with a copy of the motion to withdraw and the accompanying brief. Thelemarque also was informed of his right to supplement his attorney's presentation. Thelemarque has raised several issues for this Court's consideration. The State has responded to Thelemarque's arguments, as well as to the position taken by Thelemarque's counsel, and has moved to affirm the Superior Court's judgment.

(3) The testimony at trial fairly reflects the following events. On the evening of September 1, 2014, Esmeralda Sanchez, who was 34 weeks pregnant, asked her aunt to drive her to the hospital because she was experiencing abdominal cramping. At Nanticoke Memorial Hospital, Sanchez told a nurse, who testified at trial, that she and her boyfriend, Thelemarque, had gotten into an argument over buying clothes for their son and that Thelemarque had pushed her onto the couch and she had fallen on the floor. She also reported that Thelemarque had "stomped" on her legs, had thrown a plastic pitcher at her, and had thrown her phone out of the house. The nurse took photographs of the bruises she observed on Sanchez's legs. Those photographs were admitted at trial.

(4) The hospital reported Sanchez's complaints to the Delaware State Police. A police officer, who testified at trial, came to the hospital to interview Sanchez. Sanchez told the officer that she and Thelemarque had been arguing about school purchases for their son and that Thelemarque had taken her cell phone and thrown it outside, breaking it. Sanchez got angry after Thelemarque threw a step stool at her, which struck her. She then pushed Thelemarque, who hit her twice and stomped on her stomach with his foot. She called him several names and Thelemarque responded by throwing a water pitcher at her, which struck her. In trying to protect herself, Sanchez fell to the floor, and Thelemarque hit her again and stomped on her stomach again. Afterwards, Sanchez went to her aunt's house to get a ride to the hospital. The officer took photographs of Sanchez's injuries while she was in the hospital and also took photographs at Sanchez's home the following evening while Sanchez walked him through what had happened the night before. These photographs also were admitted into evidence.

(5) Police arrested Thelemarque several days later. He gave a recorded statement to the police, which was admitted into evidence in redacted form. He admitted that he and Sanchez had argued and that he had struck her with an open hand after she had struck him. In the taped

3

statement, Thelemarque indicated that, after he and Sanchez argued, he got into the shower. While he was showering he heard a loud noise, which he believed was Sanchez falling down the front steps as she removed some of his clothing from the house.

(6) The State called Sanchez as a witness at trial. Contrary to the statements she made at the hospital and to the police officer at her home the next day, Sanchez stated at trial that she had come home on September 1, 2014 to find Thelemarque in bed with another woman whom she did not know. Sanchez testified that she was angry and went after the woman in an attempt to throw her out of the house. She and the woman engaged in a struggle, and the woman assaulted her. She denied that Thelemarque had struck her and stated that he had simply tried to break up the fight. Sanchez stated that she was injured when she fell down her front steps as she tried to throw the woman out of her house. Sanchez stated that she had falsely accused Thelemarque because she felt angry and betrayed. At the close of the State's evidence, Thelemarque moved for a judgment of acquittal, which the Superior Court denied. Thelemarque did not present any witnesses or testify in his own defense. The jury convicted him of second degree assault but acquitted him of criminal mischief.

(7) Thelemarque has raised the following eight issues in response to his counsel's motion to withdraw on appeal: (i) the prosecutor's questioning of Sanchez was improper; (ii) the State failed to take photographs of his defensive wounds; (iii) the State improperly redacted his taped statement to exclude his description of the injuries that Sanchez caused to him; (iv) the Superior Court should have declared a mistrial after the prosecutor improperly solicited testimony from Sanchez about prior episodes of abuse; (v) the Superior Court erred in sequestering Sanchez during the presentation of her prior statements under 11 *Del. C.* § 3507; (vi) the State knowingly solicited false information that Thelemarque had "stomped" Sanchez in the stomach; (vii) the prosecutor's use of an exhibit during closing argument, which highlighted certain quotations from Thelemarque's taped statement, violated Thelemarque's discovery rights; and (viii) the Superior Court's jury instructions were prejudicial because they included the word "guilty" twenty times but only used the words "not guilty" seven times.

(8) The standard and scope of review applicable to the consideration of a motion to withdraw and an accompanying brief under Rule 26(c) is twofold: (a) this Court must be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable

5

claims; and (b) this Court must conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[1]

(9) Thelemarque first argues that the prosecutor's questioning of Sanchez was improper. Thelemarque asserts that the prosecutor repeatedly asked Sanchez the same questions to mislead her into changing her answers. We disagree. Sanchez was a hostile witness whose testimony at trial directly contradicted statements she gave to both a nurse and a police officer at the time of the incident. As such, the prosecutor was permitted to ask Sanchez leading questions and to try to elicit more detail from her in an effort to point out inconsistencies in her trial testimony.[2] Under the circumstances, we do not find that the prosecutor's questioning of Sanchez exceeded the bounds of reason.

(10) Thelemarque next contends that the State failed to collect exculpatory evidence when it did not take photographs of the defensive wounds that he showed to the officer when he gave his taped statement. Thelemarque did not raise this claim below. Accordingly, we review for

---

[1] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).

[2] *Thomas v. State*, 1997 WL 45018, *1 (Del. Jan. 16, 1997) (citing Del. R. Evid. 611(c)).

plain error.[3] An error is plain if it is apparent on the face of the record and is so clearly prejudicial as to jeopardize the integrity of the trial.[4] In this case, the officer testified that, although Thelemarque claimed to have received injuries (which Thelemarque described as minor in his taped statement), the officer did not observe any visible injuries. Under the circumstances, we find no plain error in the officer's failure to take photographs of injuries that were not visible to him.

(11) Thelemarque next contends that the State erred in redacting his taped statement to eliminate the statements he made to the interviewing officer about his injuries. We find no legal or factual support for Thelemarque's claim of error because: (a) Thelemarque's counsel approved the redactions that the State made from the taped statement; and (b) the taped statement that was played for the injury, in fact, included Thelemarque's description of the injuries he claimed that Sanchez inflicted upon him.

(12) Thelemarque next asserts that the Superior Court erred in failing to declare a mistrial after Sanchez suggested, in response to the

---

[3] *Taylor v. State*, 982 A.2d 279, 281 (Del. 2008).
[4] *Id.*

7

prosecutor's question, that there were prior incidents of abuse by Thelemarque. The question asked by the prosecutor was:

> And now, a woman that you don't know had had sex with your babies' dad in your bed, knowing your kid's going to come home; punched and kicked you. Now, at this point, why say that she threw this at you rather or why say that he threw that at you rather than she did?

Sanchez replied: "Once again, I was furious. We've been through this before, just – well, we have a history of it." Defense counsel immediately objected and requested a mistrial. The trial judge denied the motion, holding that the prosecutor had not elicited the comment and that the witness made the statement without prompting. The judge then instructed the jury to disregard Sanchez's comment.

(13) In reviewing the denial of a motion for a mistrial based upon a witness's outburst, the Court balances four factors: (i) the nature and frequency of the outbursts; (ii) whether the outburst created a likelihood that the jury would be prejudiced; (iii) the closeness of the case; and (iv) the curative action taken by the judge.[5] Applying these factors here, we find no abuse of the Superior Court's discretion in denying the motion for a mistrial. The unsolicited comment occurred only once, and it is not even clear from the context of the statement if the "history" referred to by Sanchez meant

---

[5] *Copper v. State*, 85 A.3d 689, 693-94 (Del. 2014).

8

prior acts of domestic violence. Moreover, given Sanchez's prior statements to the nurse and the police officer, as well as Thelemarque's own taped statement in which he admitted striking Sanchez at least once, we do not find this case to be particularly close. Finally, the trial judge gave an appropriate instruction to the jury to disregard the comment, which presumptively cured any potential prejudice.[6]

(14) Thelemarque's fifth argument is that the trial court and defense counsel failed to protect his rights when it allowed Sanchez to be absent during the admission of her out-of-court pretrial statements to the nurse and the police officer. To the extent Thelemarque contends that the Superior Court erred, we find no merit to this claim because the trial transcript reflects that the judge intended to require Sanchez to remain in the courtroom during the presentation of her prior out-of-court statements. Defense counsel, however, requested the opportunity to discuss the matter with Thelemarque and then reported to the trial judge that Sanchez did not need to remain in the courtroom. Accordingly, we find Thelemarque waived any claim of error by the Superior Court.[7] Moreover, to the extent

---

[6] *McNair v. State*, 990 A.2d 398, 403 (Del. 2010).

[7] *Foster v. State*, 961 A.2d 526, 530 (Del. 2008).

9

Thelemarque claims that his lawyer erred, this Court will not review claims of ineffective assistance of counsel for the first time on direct appeal.[8]

(15) Thelemarque next contends that the State presented false testimony about Thelemarque stomping Sanchez in the stomach, even though Sanchez denied that happened in her sworn trial testimony, and there was no physical evidence of bruising to Sanchez's abdomen and no harm caused to the unborn baby. Essentially, Thelemarque argues that, because the evidence about whether Thelemarque struck Sanchez in the stomach was conflicting, the State's evidence must have been false. The jury, however, is the sole judge of the credibility of witnesses and is responsible for resolving conflicts in the testimony.[9] In this case, the State's argument to the jury that Thelemarque had struck Sanchez in the abdomen was supported by competent testimony and was entirely proper, even in the face of conflicting evidence. Accordingly, we reject this claim on appeal.

(16) Thelemarque next argues that the Superior Court erred in overruling defense counsel's objection to the prosecutor's use of an exhibit during closing that highlighted certain quotes taken from Thelemarque's taped interview with the police officer. Thelemarque contends that the use

---

[8] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).

[9] *Tyre v. State*, 412 A.2d 326, 300 (Del. 1980).

of this exhibit violated his discovery rights because there was no transcript of the interview that was made available to him before trial. In overruling the objection, the Superior Court noted that defense counsel had received an audio copy of the taped statement and that the taped statement was admitted into evidence. The prosecutor had told the jury in referring to the State's exhibit that their recollection of what Thelemarque said during the interview was controlling even if it conflicted with the prosecutor's exhibit. The judge reiterated to the jury that their recollection of what Thelemarque said during his interview was controlling over the prosecutor's recollection or defense counsel's recollection. Moreover, Thelemarque does not contend on appeal that the quotes on the exhibit were inaccurate in any way. Under the circumstances, we find no merit to Thelemarque's claim of error.[10]

(17) Finally, Thelemarque contends that he was prejudiced by the Superior Court's jury instructions, which used the word "guilty" twenty times but only used the phrase "not guilty" seven times. We review a trial judge's charge to the jury by looking at the instructions as a whole to ensure that the instructions contain a correct statement of the law, are informative,

---

[10] *See Spence v. State,* __ A.3d __, 2015 WL 7168159, *7 (Del. Nov. 13, 2015) ("This Court does not seek to discourage the use of technology in closing arguments to summarize and highlight relevant evidence for the benefit of the jury. But slides may not be used to put forward impermissible evidence or make improper arguments before the jury.").

and are not misleading.[11] Thelemarque does not dispute that the Superior Court's instructions were a correct statement of the law. Taken as a whole, we also find that the charge was informative and was not misleading. We find no support for Thelemarque's claim that the instructions were prejudicial.

(18) This Court has reviewed the record carefully and has concluded that Thelemarque's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Thelemarque's counsel has made a conscientious effort to examine the record and the law and has properly determined that Thelemarque could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

_____
Justice

---

[11] *Rybicki v. State*, 119 A.3d 663, 675 (Del. 2015).