IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LYNELL B. TUCKER, | § | |
| | § | No. 87, 2017 |
| Defendant Below- | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | Cr. ID 1109012280A (N) |
| Plaintiff Below- | § | |
| Appellee. | § | |
| | § | |

Submitted: August 29, 2017
Decided: November 3, 2017
Corrected: November 3, 2017

Before **STRINE**, Chief Justice; **SEITZ** and **TRAYNOR**, Justices.

## ORDER

This 3rd day of November 2017, upon consideration of the appellant's Supreme Court Rule 26(c) brief, his attorney's motion to withdraw, and the State's response thereto, it appears to the Court that:

(1)  In 2013, a jury convicted the defendant-appellant, Lynell Tucker, of Murder in the First Degree and Possession of a Firearm During the Commission of a Felony.  The Superior Court sentenced Tucker to life imprisonment plus a term of years.  This Court affirmed his convictions and sentence on direct appeal.[1] Tucker filed a motion for postconviction relief and

---

[1] *Tucker v. State*, 2014 WL 7009954 (Del. Nov. 21, 2014).

a motion for appointment of counsel in April 2015. The Superior Court appointed counsel in May 2015. Appointed counsel requested and received an extension of time to review the case and to file either an amended motion for postconviction relief or a motion to withdraw as counsel under Superior Court Criminal 61(e)(6).[2] Ultimately, appointed counsel filed a motion to withdraw as counsel along with a supporting memorandum. Tucker filed a response to counsel's motion. The Superior Court granted counsel's motion to withdraw and denied Tucker's motion for postconviction relief on February 20, 2017. This appeal followed.

(2) This Court appointed a different attorney to represent Tucker on appeal. After review, Tucker's appellate counsel has filed a brief and a motion to withdraw under Rule 26(c). Appellate counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. By letter, appellate counsel informed Tucker of the provisions of Rule 26(c) and provided him with a copy of the motion to withdraw and the accompanying brief. Tucker also was informed of his right to supplement his attorney's presentation.

---

[2] *See* Del. Super. Ct. Crim. R. 61(e)(6). Rule 61(e)(6) allows appointed counsel to file a motion to withdraw if, after reviewing the case, counsel finds no substantial ground for relief that counsel can ethically advocate on the defendant's behalf.

(3) In response to appellate counsel's motion and brief, Tucker raised several issues for this Court's consideration. He contends that the lawyers appointed to represent him in the postconviction proceedings in the Superior Court and on appeal have provided ineffective assistance by failing to brief the issues that Tucker wanted them to argue. Those meritorious arguments, according to Tucker, are that: (i) the public defenders appointed to represent him at trial were subject to a conflict of interest; (ii) trial counsel was ineffective for failing to communicate with him regarding witness statements; and (iii) trial counsel was ineffective for failing to pursue the defense strategy that Tucker wanted to pursue.[3] The State has responded to Tucker's points, as well as to the position taken by Tucker's counsel, and has moved to affirm the Superior Court's judgment.

(4) The standard and scope of review applicable to the consideration of a motion to withdraw and an accompanying brief under Rule 26(c) is twofold: (a) this Court must be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (b) this Court must conduct its own review of the record and determine

---

[3] To the extent that Tucker raised other issues in the motion he filed in the Superior Court, he has waived any right to further review of those claims on appeal by failing to argue those issues as part of the Rule 26(c) opening brief. *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993).

whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[4]

(5)    At trial, the State presented evidence that, on September 14, 2011, Dominique Helm ("Helm") was shot in the back outside his mother's home in Wilmington. Helm's mother, Nicole, testified that before the shooting she was standing in her kitchen and heard her son arguing with someone. She looked out the window and saw two men, whom she identified in court as Lynell Tucker and his father, Tony Dunn. The two men approached her son and told him to go back inside his house. Nicole opened the window and told her son to come inside. She was walking toward her front door when she heard her son trying to open the door. Nicole heard a shot, her front door opened, and her son stepped through the door and collapsed. The forensic expert testified that Helm died from a single gunshot wound to his back.

(6)    Helm's cousin, Devin Marsh, testified at trial that he and Helm were hanging out on the porch of Shakeem Davis. Davis lived in his grandmother's house, which was across the street from Helm. Marsh testified that Tucker came along and had words with Helm and Marsh. Tucker drove

---

[4] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).

off in a green truck but returned on foot a few minutes later. When he returned, Tucker approached Helm, again exchanged words with him and then punched Helm in the face. A scuffle ensued. During the fight, Tucker was on top of Helm. Dunn appeared and began hitting Helm. When the physical fight ended, Helm and Tucker continued to argue. Tucker then pulled out a gun and shot Helm.

(7)   Davis also testified. He stated that Helm was his cousin because Davis' father and Helm's father are brothers. He also testified that Tucker is his cousin because Dunn is his mother's brother. At trial, Davis stated that he was hanging out with Helm on the day of the murder. He saw Tucker earlier in the day but claimed not to have seen him later. The State offered into evidence a taped statement that Davis had made to police the day after the murder. The trial court allowed the taped statement into evidence over defense counsel's objections. In that statement, Davis told police that he had been hanging out on his porch with Helm when Tucker approached and told them that anyone who was not a "Dunn" had to leave. According to Davis' statement, Tucker left and then came back with his father. Davis was inside the house when he heard a gunshot. He ran outside, saw Tucker and Dunn standing in the area, and saw Helm in the doorway of his mother's house, apparently bleeding.

5

(8) Another witness, Shawn Whalen, testified that he was standing on his porch smoking a cigarette on the night in question when he saw Helm, whom he knew, in an altercation with another man, whom he did not know. During the fight, Whalen saw a third man run over and push Helm away. Whalen heard Helm say to the man with whom he had been fighting, "You're lucky your pop saved your life." Whalen saw the unknown man then pull out a gun and shoot Helm.

(9) After the shooting, Tucker and his father left the scene together. Using cell phone tower records, the police were able to track the pair from Wilmington to Florida. On September 23, 2011, police apprehended Tucker, who was found hiding in the trunk of a car, in Florida. Tucker was arrested on multiple charges including Murder in the First Degree. Dunn was arrested several days later at his residence in Wilmington on a felony charge of Hindering Prosecution.

(10) Tucker and Dunn were tried jointly. Dunn testified at trial. Tucker did not. Dunn stated that he was present when Helm was shot. He testified that, before the shooting, he had been working at his garage, which was two blocks away. His son, Tucker, had driven to the garage and complained to his father that there were people hanging out and being loud on the steps of his grandmother's house. Tucker started walking back in the

6

direction of his grandmother's, and Dunn followed shortly thereafter. Dunn testified that by the time he walked the two blocks, his son and Helm were engaged in a tussle. Tucker was on top of Helm, so Dunn rushed over to knock his son off of Helm. Dunn testified that after Tucker and Helm were separated, Helm threatened to kill his son. Dunn testified that Devin Marsh then pulled out a black handgun. Dunn thought Marsh was going to shoot Tucker, but Marsh fired the gun and struck Helm in the back. Dunn testified that he feared for his son's life, so he took him to Florida.

(11) The first issue that Tucker raises on appeal is a claim that the lawyers appointed to represent him in the postconviction proceedings in the Superior Court and on appeal have provided ineffective assistance because they each moved to withdraw and failed to assist Tucker in arguing his postconviction claims. This Court, however, will not consider a claim of ineffectiveness on appeal if it was not raised and considered by the Superior Court in the postconviction proceedings below.[5] Moreover, we note that both the Superior Court Criminal Rule 61 and Supreme Court Rule 26(c) mandate that appointed counsel should move to withdraw from further representation in postconviction proceedings if counsel finds no legal claim that counsel can

---

[5] *Duross v. State*, 494 A.2d 1265, 1267 (Del. 1985).

7

advocate ethically. Thus, counsel's motion to withdraw, without more, does not render counsel's representation ineffective.

(12) Tucker's other argument on appeal is that his appointed counsel at trial were ineffective due to a conflict of interest, for failing to provide him with witness statements, and for failing to pursue a different defense strategy. This Court applies the *Strickland* standard in reviewing claims of ineffective assistance of counsel in a timely first postconviction proceeding. Under *Strickland*, Tucker must demonstrate that: (a) his trial counsel's conduct fell below an objective standard of reasonableness; and (b) there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different.[6] There is a "strong presumption" that counsel's representation was professionally reasonable.[7] In order to overcome this presumption, Tucker must show that his counsel's conduct was not part of a "sound trial strategy."[8]

(13) Tucker's first allegation of ineffective assistance is that the two lawyers appointed to represent him at trial had a conflict of interest because they worked for the Public Defender and the Public Defender had represented

---

[6] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).
[7] Strickland v. Washington, 466 U.S. at 689.
[8] *Redden v. State*, 150 A.2d 768, 773 (Del. 2016) (*citing Strickland v. Washington*, 466 U.S. at 689).

8

him in previous criminal matters. Tucker cites to no facts or law to support his conclusory assertion that the Public Defender's prior representation of him created a disqualifying conflict in this matter. Under the circumstances, Tucker has failed to substantiate any concrete allegation of cause or actual prejudice.[9]

(14) Tucker next asserts that trial counsel was ineffective for failing to provide him with witness statements. Tucker does not identify with any specificity which witness statements he did not receive, nor does he argue that his failure to receive witness statements affected the outcome of his trial. Moreover, the record reflects that Tucker raised a similar complaint about his attorneys on the first day of his trial. Defense counsel responded on the record that she had explained to Tucker that she was prohibited from providing certain witness statements under the terms of a protective order entered by the trial judge. Tucker did not pursue the issue further. Under the circumstances, we find no cause or prejudice to substantiate Tucker's claim of ineffective assistance.

(15) Finally, Tucker contends that counsel was ineffective for failing to pursue a mental health defense in addition to counsel's actual defense that Tucker was not the shooter. According to Tucker, counsel should have argued

---

[9] *Younger v. State*, 580 A.2d 552, 556 (Del. 1999).

that Tucker was not the shooter, but if he were the shooter, he was not guilty by reason of insanity or mental illness.

(16) We find no merit to Tucker's argument. Defense counsel has the authority to manage the day-to-day conduct of the defense strategy, including making decisions about when and whether to object, which witnesses to call, and what defenses to develop.[10] The record reflects that trial counsel conducted a careful pretrial investigation of Tucker's mental health, including having him examined by an expert and vigorously challenging his competency to stand trial. Given the Superior Court's conclusion that Tucker was competent[11] and given Tucker's father's testimony that Tucker was *not* the shooter, it was a reasonable trial strategy for defense counsel to pursue a factual innocence defense instead of, and not in addition to, a mental health defense. In that regard, presenting the factual defense that Tucker was not the shooter but that, if he was, it was because of a mental illness, posed a risk of undermining the reliability of the factual defense in the eyes of the jury.

(17) We have reviewed the record carefully and conclude that Tucker's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Tucker's counsel has made a

---

[10] *Zimmerman v. State*, 2010 WL 546971, *2 (Del. Feb. 16, 2010).
[11] On direct appeal, we affirmed the Superior Court's ruling that Tucker was competent to stand trial. *See Tucker v. State*, 2014 WL 7009954, *2 (Del. Nov. 21, 2014).

10

conscientious effort to examine the record and the law and has properly determined that Tucker could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice