IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DENEISHA WRIGHT, | § | |
| | § | |
| Defendant Below, | § | No. 605, 2018 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 1701009508A |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: May 17, 2019
Decided: June 6, 2019

Before **STRINE**, Chief Justice; **SEITZ** and **TRAYNOR**, Justices.

**O R D E R**

After consideration of the brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26(c), the State's response, and the Superior Court record, it appears to the Court that:

(1) The appellant, Deneisha Wright, was indicted on two counts of Murder First Degree, Attempted Robbery First Degree, three counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), and Possession of a Firearm by a Person Prohibited ("PFBPP"). A jury found Wright guilty of one count of Murder First Degree, Attempted Robbery First Degree, and two counts of PFDCF. After a separate bench trial following the jury trial, the Superior Court found Wright guilty of PFBPP. The jury found Wright not guilty of one count of murder and the

related count of PFDCF.  The Superior Court sentenced Wright to a total term of imprisonment of life plus nine years.  This is Wright's direct appeal.

(2)	The charges arose from the shooting death of Charles Mays.  The evidence presented at trial fairly reflects that in the early afternoon of January 14, 2017, Mays's pick-up truck crashed in Wilmington, and Mays was found unresponsive inside, with gunshot wounds to his legs.  Mays was transported to the hospital, where he was pronounced dead.  A trail of blood led police officers from Mays's truck to a nearby apartment building.  Surveillance video obtained from the apartment complex showed Braheem Mitchell (Wright's brother) and Kori Thomas (a friend of the family), exiting Apartment 1-A.  Lisa Mitchell (Wright's aunt) then exited the apartment, where she lived with her daughter Sharnice Mitchell, and approached Mays's truck.  While Lisa Mitchell was standing at the truck, a fourth person exited Apartment 1-A, stopped briefly behind a car, and then approached the passenger side of Mays's truck.  As the truck pulled away, knocking Lisa Mitchell to the ground, the fourth person extended an arm toward the passenger door of the truck and shot Mays.

(3)	Lisa Mitchell testified that she purchased pills from Mays every morning, and that she arranged to meet Mays that morning.  As she leaned down to give Mays the money for the pills, someone approached the truck, shooting a gun.

2

Lisa Mitchell got knocked down as the truck began to drive away, and as she stood up, she saw that the shooter was Wright.

(4) Ralph Mitchell, Wright's cousin, testified that he was at Apartment 1-A on the morning of January 14, 2017 and that Wright, Sharnice Mitchell, Latasha Brown (also known as "Brownie"), Kori Thomas, and Braheem Mitchell were also there. He testified that he heard the others plotting to have Lisa Mitchell call Mays to the apartment so that they could rob Mays of pills and money. He testified that he and Brownie watched from the apartment window and that he saw Wright fire four shots at Mays. On the surveillance video, Ralph Mitchell identified Braheem Mitchell and Kori Black as the first two people to leave the apartment, followed by Lisa Mitchell and then Wright.

(5) Tyrell Simpson testified that he was in a romantic relationship with Wright for approximately one year in 2016-2017. He stated that around 12:30 p.m. on January 14, 2017, he and Wright were at their residence when Braheem Mitchell and Kori Black stopped by and Wright abruptly left with them. Then, in the evening of January 14, Simpson spoke with Wright on the telephone and "[s]he said she had done something dumb. . . . She had shot someone." Simpson also testified that about a week before the incident, he had heard Wright talking to Braheem Mitchell about robbing Mays because Mays had money from selling pills. Simpson testified

3

under a plea agreement and cooperation agreement reached with the State in connection with unrelated charges.

(6)     When law enforcement located Wright approximately ten days after the shooting, she was wearing a jacket that the State suggested appeared similar to the jacket worn by the shooter in the surveillance video. Expert testing identified several particles that were consistent with gunshot residue on the jacket. Ballistics evidence indicated that a gun recovered by probation officers some time after the incident was the gun that killed Mays, but no link was established between Wright and the residence where the gun was found or its occupants.

(7)     The defense focused on questioning the credibility of the State's witnesses and suggesting that Brownie, who died before trial, was the shooter. Wright testified that she was not at Apartment 1-A on January 14, 2017, and that she did not attempt to rob Mays and did not shoot Mays. She testified that she was at the corner store at the time of the shooting. She further testified that Lisa Mitchell, Ralph Mitchell, and Tyrell Simpson each had conflicts with her that could have motivated them to provide false testimony against her. Aigner Neal, who had children with Wright's brother, and Marsha Mitchell, Wright's mother, testified that the shooter on the video looked like Brownie and not Wright. Robin Henry, who was Wright's cousin and Ralph Mitchell's sister, testified that a few days after Mays

4

was shot, she drove Brownie on some errands. When Brownie went into a store, Henry discovered that a wallet that Brownie left on the seat was Mays's wallet.

(8) The jury found Wright guilty of first-degree attempted robbery, felony murder, and the related PFDCF charges. The jury acquitted her of the intentional murder charge and the related PFDCF charge.

(9) On appeal, Wright's counsel has filed a brief and a motion to withdraw under Supreme Court Rule 26(c). Wright's counsel asserts that, based upon a conscientious review of the record, there are no arguably appealable issues. Counsel informed Wright of the provisions of Rule 26(c) and provided her with a copy of the motion to withdraw and the accompanying brief. Counsel also informed Wright of her right to supplement counsel's presentation. Wright responded with points she wanted to present for the Court's consideration, which counsel included with the Rule 26(c) brief. The State has responded to the Rule 26(c) brief and argues that the Superior Court's judgment should be affirmed.

(10) When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must be satisfied that the appellant's counsel has made a conscientious examination of the record and the law for arguable claims.[1] This Court must also conduct its own review of the record and determine "whether the

---

[1] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S.738, 744 (1967).

appeal is indeed so frivolous that it may be decided without an adversary presentation."[2]

(11) Wright's arguments on appeal may be summarized as follows: (i) the jury should have received a lesser-included offense instruction because a gunshot wound to the leg can support only a manslaughter conviction, not a conviction for first-degree murder; (ii) counsel was ineffective for failing to request a lesser-included offense instruction; (iii) counsel provided ineffective assistance by failing to request an alibi instruction and by failing to seek evidence to corroborate the defendant's alibi defense; (iv) the court's failure to give an alibi instruction, even absent a request from counsel, was plain error; (v) the State's witnesses were unreliable and had conflicts of interest; (vi) the surveillance video did not demonstrate that Wright was the perpetrator; (vii) no DNA evidence linked Wright to the murder weapon; (viii) Lisa Mitchell's testimony was unreliable; (ix) Wright's counsel did not object to "unlawful procedures" in the courtroom; and (x) defense counsel provided ineffective assistance on appeal by failing to raise these points.

(12) Many of Wright's arguments raise claims of ineffective assistance of counsel. In general, the Court does not consider on direct appeal claims of ineffective assistance of counsel and does not do so here.[3] For the reasons discussed

---

[2] *Penson*, 488 U.S. at 81.

[3] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994). *See also Woods v. State*, 2019 WL 643862, at *3 (Del. Feb. 14, 2019) ("Typically an ineffective counsel claim is pursued through a motion

below, we conclude that Wright's other claims are without merit. We therefore affirm the Superior Court's judgment.

(13) Wright's claim that the Superior Court should have provided the jury with an instruction for Manslaughter as a lesser-included offense of Murder First Degree is without merit. Wright did not request a lesser-included offense instruction. We review for plain error a claim that the Superior Court erred by failing to instruct the jury, *sua sponte*, on a lesser-included offense.[4] Delaware has adopted the "party autonomy" approach for jury instructions on lesser-included offenses.[5] Under this approach, "the burden is initially on the parties, rather than the trial judge, to determine whether an instruction on a lesser-included offense should be considered as an option for the jury. The trial judge should not give an instruction on an uncharged lesser offense if neither side requests such an instruction because to do so would 'interfere with the trial strategies of the parties.'"[6]

(14) We find no plain error with respect to the court's failure to provide a lesser-included offense instruction. Wright's defense at trial was that she was not the shooter. A lesser-included offense instruction would have been inconsistent with

---

for postconviction relief under Superior Court Criminal Rule 61 and is adjudicated on the basis of the record developed during the postconviction proceeding.").

[4] *Hutt v. State*, 2012 WL 3525404, at *1 (Del. Aug. 15, 2012).

[5] *Id.* at *2.

[6] *State v. Brower*, 971 A.2d 102, 107 (Del. 2009) (citations omitted).

7

that defense.[7]  Moreover, there is no basis for Wright's contention that a gunshot to the leg cannot result in a conviction for first-degree murder.  The jury was instructed that they could find Wright guilty of felony murder if she recklessly caused Mays's death "in the course of and in furtherance of Defendant's commission of a felony, attempt to commit a felony, or Defendant's immediate flight after committing a felony."[8]  The relevant difference between manslaughter and felony murder for purposes of this case is that felony murder requires that the death occur "while engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any felony," while manslaughter does not; neither requires that the wound be to a particular part of the body.[9]

(15)  We also review for plain error Wright's claim that the court erroneously failed to give an alibi instruction, even though Wright did not request the instruction.[10]  Wright has the burden of showing that the alleged error was so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial

---

[7] *Kent v. State*, 2018 WL 3156987, at *5 (Del. June 26, 2018).

[8] *State v. Wright*, Cr. ID No. 1701009508A, Docket Entry No. 43 (Jury Instructions) at 11 (Del. Super. Ct.) [hereinafter "Jury Instructions"].  *See also* 11 *Del. C.* § 636(a)(2) (defining felony murder).

[9] *Compare* 11 *Del. C.* § 636(a) ("A person is guilty of murder in the first degree when . . . (2) While engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any felony, the person recklessly causes the death of another person . . . ."), *with* 11 *Del. C.* § 632 ("A person is guilty of manslaughter when:  (1) The person recklessly causes the death of another person . . . .").  *Cf. also Gregory Wright v. State*, 374 A.2d 824, 827 (Del. 1977) ("[I]f a wound, even if not mortal, is a causal factor in bringing about a death, a defendant will be liable for homicide.").

[10] *Smith v. State*, 2018 WL 2427594, at *3 (Del. May 29, 2018).

process.[11] If a defendant offers an alibi defense by introducing substantial evidence that she was elsewhere when the crime was committed, the Superior Court's failure to give an alibi instruction, even if one is not requested, is plain error.[12]

(16) Wright testified at trial that she was not at Apartment 1-A on January 14, 2017, but at home, and that she remembered, "clear as a bell," that around the time of Mays's murder she was at the corner store.[13] But when she was questioned by police after her arrest, she said that she had been high on Percocet and Xanax and did not remember anything about the day that Mays died.[14] Wright's cousin and her aunt both testified that Wright was at the apartment on January 14, 2017, and that they saw Wright shoot Mays. Although the court did not give an explicit alibi instruction, the jury was instructed that, to find Wright guilty, the jury had to be "satisfied, beyond a reasonable doubt, that the defendant has been accurately identified" and that "the defendant was in fact the person who committed the act."[15] Moreover, the jury clearly recognized the alibi issue, because during deliberations they submitted a note that inquired, "Was there any verification of defendant's alibi, corner store?"[16] Based on a careful review of the record, we conclude that the

---

[11] *Id.*

[12] *Id.*

[13] *State v. Wright*, Cr. ID No. 1701009508A, Tr. at 169:17-170:21 (Del. Super. Ct. May 31, 2018).

[14] *Id.* at 170:22-171:20.

[15] Jury Instructions at 18.

[16] *State v. Wright*, Cr. ID No. 1701009508A, Jury Note Tr. at 2:11-12 (Del. Super. Ct. June 1, 2018).

9

Superior Court did not commit plain error by failing, *sua sponte*, to issue an alibi instruction.

(17)  Wright's other claims on appeal amount to arguments that the evidence was insufficient to prove that she was the perpetrator.  In reviewing a claim of insufficient evidence, this Court must determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the defendant guilty beyond a reasonable doubt.[17]  When making that determination, the Court does not distinguish between direct and circumstantial evidence.[18]  Moreover, when the determination of facts turns on the credibility of a witness, this Court will not substitute its opinion for that of the trier of fact.[19]  Rather, "[i]t is the sole job of the jury to determine the weight to be given to the evidence and to resolve any conflicts in the testimony."[20]

(18)  Wright argues that she could not be identified on the surveillance video; the State presented no DNA evidence linking her to the gun that killed Mays; and the testimony of the State's fact witnesses was unreliable for various reasons, including because they had conflicts of interest.  We conclude that none of Wright's contentions warrant reversal.  The jury heard testimony from several witnesses who

---

[17] *Mitchell v. State*, 2012 WL 112602, at *2 (Del. Jan. 12, 2012).

[18] *Dryden v. State*, 2008 WL 555956, at *1 (Del. Mar. 3, 2008).

[19] *Id.*

[20] *Mitchell*, 2012 WL 112602, at *2.

said they saw Wright shoot Mays or provided corroborating, circumstantial evidence, including witnesses who knew Wright and identified her as the person on the surveillance video, and the jury heard testimony from Wright and others suggesting that she was not the shooter. Both sides also presented evidence relating to the various witnesses' credibility, including their prior convictions and their potential conflicts of interest. The jury had discretion to determine the credibility of the witnesses, and we find that the evidence against Wright was sufficient to sustain her convictions.[21]

(19) The Court has carefully reviewed the record and concluded that Wright's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that counsel made a conscientious effort to examine the record and the law and properly determined that Wright could not raise a meritorious claim on appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[21] *Id.*; *Dryden*, 2008 WL 555956, at *1.

11