Judgment rendered August 27, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,374-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                        Appellee

versus

QUINTON TERELL PEACE                      Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 386,867

Honorable, Michael A. Pitman, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Peggy J. Sullivan

QUINTON TERELL PEACE                   Pro Se

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

REBECCA ARMAND EDWARDS
CHRISTOPHER BOWMAN
Assistant District Attorneys

* * * *

Before COX, MARCOTTE, and ELLENDER, JJ.

**MARCOTTE, J.**

This criminal appeal arises from the First Judicial District Court, Parish of Caddo, the Honorable Michael Pitman presiding. Defendant Quinton Peace was found guilty of second degree murder and sentenced to life imprisonment without benefits. He appeals his conviction and sentence. Defendant's appellate counsel has filed a motion to withdraw, along with a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), *State v. Jyles*, 96-2669 (La. 12/12/97), 704 So. 2d 241, *State v. Mouton,* 95-0981 (La. 4/28/95), 653 So. 2d 1176, and *State v. Benjamin*, 573 So. 2d 528 (La. App. 4 Cir. 1990), alleging that the record is devoid of non-frivolous issues upon which to base the appeal. For the following reasons, we affirm defendant's conviction and sentence and grant appellate counsel's motion to withdraw.

## FACTS AND PROCEDURAL HISTORY

Quinton Peace was charged by bill of indictment with the second degree murder of Chavez Parker ("Parker"), in violation of La. R.S. 14:30.1. The offense occurred on December 21, 2021, and Peace pled not guilty. At trial, police officers from the Shreveport Police Department ("SPD") testified that in the early morning hours of December 21, 2021, they were riding patrol through the Linwood Homes Apartments in Shreveport, Louisiana, where defendant lived. They observed a red Chevy Impala parked in the apartment complex with its trunk and four doors open. There were two individuals standing beside the car. The pair ran away upon seeing police but were apprehended a short time later. A dead body was discovered in the Impala. One of the fleeing suspects, Darius Persley ("Persley"), was

caught with bloody socks in his hands; he was arrested. The other individual, Ashlynn Bergeaux ("Bergeaux"), was taken to the hospital.

Near the Impala, which was registered to Parker, police found a bottle of rubbing alcohol and bloody paper towels. The car was very dirty, but there were marks on the vehicle consistent with someone attempting to clean or wipe it. Officers found 9mm cartridge casings in the seats of the Impala.

In a nearby apartment unit, police found two empty boxes, one for ammunition for a 9mm handgun, and another for a 9mm SCCY CPX-1 pistol with serial number 936310. After speaking with Bergeaux, police issued an arrest warrant for Peace, who was later arrested in Fort Worth, Texas, and was found in possession of a CPX-1 pistol with the same serial number.

Bergeaux testified that she was with Persley, who was her boyfriend at the time, and Peace in the early morning of December 21, 2021. Bergeaux identified defendant in open court. Peace drove them in his white SUV to a residential area to purchase marijuana. Persley and defendant got into the red Impala to make the drug sale, and Bergeaux remained in the SUV. She testified that she heard four gunshots, Persley and defendant ran back to the SUV, and they drove away. Bergeaux said that Peace and Persley were talking about leaving fingerprints in the Impala, so Peace drove the SUV back to the Impala's location, got into Parker's car, and sat on Parker's lap in the driver's seat to drive the car to Linwood Homes. Persley then forced Bergeaux to drive the SUV to the apartment complex by threatening to shoot her.

A surveillance video of the shooting showed a man exiting a house, getting into an Impala, reversing into a neighboring driveway, and parking.

2

About 26 minutes later, a white SUV arrived on the scene. Two men exited the SUV, walked to the Impala, and got in. Ten minutes later, the two males ran back to the SUV and quickly drove away. Approximately 9-10 minutes later, the SUV returned, and the driver exited the SUV and got into the Impala. Both vehicles were then driven away.

At Linwood Homes, Peace joked and laughed about having to sit in Parker's lap to drive his car. He and Persley moved Parker's body to the passenger seat and made Bergeaux help them to remove any evidence from the car that might have implicated them in the shooting. Bergeaux stated that Peace and Persley intended to submerge the Impala in a body of water. The police interrupted their efforts.

The autopsy of Parker showed that he died from four penetrating gunshot wounds to his right temple, cheek, neck, and shoulder. A forensic firearms expert testified that three of the shots recovered from Parker's body were fired from the CPX-1 pistol found in Peace's possession when he was arrested. The fourth shot was fired from a different CPX-1 pistol.

Peace was interviewed by SPD detective Monique Coleman ("Det. Coleman") after his arrest. He told Det. Coleman in his interview that he shot Parker in the Impala, left the neighborhood, and then returned to get the car. Peace said that Parker was too heavy to move, so he sat in the victim's lap to drive the car to Linwood Homes. Peace stated that he wanted to remove any evidence from the car that could tie them to the crime and leave it abandoned. He said he retrieved alcohol, wipes, and other items to clean the vehicle.

Peace claimed Parker was reaching forward for a gun when he shot him and that the shooting was a mistake. Det. Coleman testified that Peace's

3

reenactment of the shooting that he performed during his interview was implausible given the injuries Parker sustained. Peace said he was attempting to rob Parker at the time he shot him, and he kept the gun he used to shoot the victim with him until he was taken into custody. A unanimous jury found Peace guilty as charged.

Peace filed a motion for a post-verdict judgment of acquittal asserting that the state failed to prove beyond a reasonable doubt that he committed second degree murder; the trial court denied his motion at his sentencing hearing. Defendant waived any sentencing delays.

The trial court considered the aggravating and mitigating sentencing factors in La. C. Cr. P. art. 894.1 and found that: 1) Peace lacked remorse for shooting Parker; 2) he showed deliberate cruelty in shooting the victim at near-point-blank range; 3) he used his status as Parker's friend to lure him out and rob him; 4) he created a risk of death or great bodily harm to more than one person by discharging a firearm in a residential neighborhood; 5) he and Persley threatened to kill Bergeaux if she did not assist them with the cleanup after the offense occurred; 6) Parker's relatives testified about the significant spiritual and emotional loss his death was to their family; and 7) Peace had one conviction for contributing to the delinquency of a juvenile, and prior to the instant trial, he attempted to disarm a deputy.

The trial court sentenced Peace to life imprisonment at hard labor without benefits. The court informed defendant of his post-conviction relief time constraints. Peace now appeals.

**DISCUSSION**

Appellate counsel seeks permission to withdraw as counsel and filed a brief pursuant to *Anders v. California*, *supra*, *State v. Jyles*, *supra*, *State v.*

4

*Mouton*, *supra*, and *State v. Benjamin*, *supra*, arguing there are no non-frivolous issues upon which to base an appeal. The brief outlines the procedural history of the case, including Peace's sentencing history, and contains a detailed and reviewable assessment for defendant and this court regarding whether the appeal is worth pursuing. Counsel states that there exists sufficient evidence for Peace's conviction and notes that trial counsel did not file motions to suppress the evidence or defendant's statement; therefore, those issues are not preserved for appeal. Counsel declares that defendant's motion for a post-verdict judgment of acquittal was submitted without further argument and was denied by the trial court.

Appellate counsel verified that she mailed copies of the motion to withdraw and the brief to Peace, in accordance with *Anders v. California*, *supra*, *State v. Jyles*, *supra*, and *State v. Mouton, supra*. We note that while this appeal was pending, defendant requested a copy of the appellate record but did not file a pro se brief. The State declined to file a brief.

In *Anders v. California*, *supra,* the United States Supreme Court stated that appointed appellate counsel may request permission to withdraw if she finds her case to be wholly frivolous after a conscientious examination of it. The request must be accompanied by a brief referring to anything in the record that might arguably support the appeal so as to provide the reviewing court with a basis for determining whether appointed counsel fully performed her duty to support her client's appeal to the best of her ability and to assist the reviewing court in making the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw. *McCoy v. Ct. App. Wis., Dist. 1*, 486 U.S. 429, 438-39, 108 S. Ct. 1895, 100 L. Ed. 2d 440 (1988), *citing Anders v. California*, *supra*.

5

In *State v. Jyles*, *supra*, the Louisiana Supreme Court stated that an *Anders* brief need not tediously catalog every meritless pretrial motion or objection made at trial with a detailed explanation of why the motions or objections lack merit. The court explained that an *Anders* brief must demonstrate by full discussion and analysis that appellate counsel "has cast an advocate's eye over the trial record and considered whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the jury for its consideration." *Id.* at p. 2, 704 So. 2d at 241.

Our independent review of the record supports appellate counsel's assertion that there are no non-frivolous issues to be raised on appeal. The bill of indictment correctly charged defendant and plainly and concisely stated the essential facts constituting the charged offense. The indictment sufficiently identified defendant and the crime charged. *See* La. C. Cr. P. arts. 464-466. The record reflects that defendant appeared at each stage of the proceedings against him, including his arraignment, trial, and sentencing. We further find that the jury was properly composed of twelve members and that it reached a unanimous verdict. Furthermore, defense counsel made several contemporaneous objections during trial, and those with merit were sustained by the trial court.

Our review of the record for sufficiency of the evidence establishes that the evidence presented was sufficient under the standard found in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), to prove the essential statutory elements of second degree murder. *See* La. R.S. 14:30.1.

The record reveals that Bergeaux identified Peace as one of the people who entered Parker's vehicle. She testified that she heard gunshots shortly thereafter, and Persley and Peace then ran back to Peace's SUV to flee the scene. The evidence shows that Peace shot Parker at close range, moved his Impala to a different location, and attempted to cover up the crime, threatening Bergeaux in the process. Persley was seen by police, in the parking lot of Peace's apartment complex, attempting to clean the Impala, which contained Parker's dead body. Upon his arrest, Peace was in possession of a firearm used to shoot Parker, which he said had been in his possession up until his arrest. Peace also admitted to shooting Parker in his police interview. There is no doubt that Peace murdered the victim and his conviction is sound.

Additionally, Peace's life sentence without benefits is lawful and not excessive. The trial court properly considered the aggravating and mitigating factors found in La. C. Cr. P. art. 894.1. The penalty for second degree murder is a mandatory life sentence at hard labor without benefits. La. R.S. 14:30.1(B); *See State v. Fredieu*, 52,042 (La. App. 2 Cir. 6/27/18), 250 So. 3d 1157, *writ denied*, 18-1315 (La. 10/29/18), 254 So. 3d 1218.

The record was reviewed for errors patent and none were found.

## CONCLUSION

For the foregoing reasons, defendant's conviction and sentence are affirmed. Appellate defense counsel's motion to withdraw is hereby granted.

**CONVICTION AND SENTENCE AFFIRMED; APPELLATE COUNSEL'S MOTION TO WITHDRAW GRANTED.**